1

2

3

4

5

6 # UNITED STATES DISTRICT COURT

7 ## EASTERN DISTRICT OF CALIFORNIA

8

9 SHAWNA HARTMANN and
CAREN HILL,

CASE NO. 1:10-cv-00045-LJO-SMS

10             Plaintiffs,

FINDINGS AND RECOMMENDATIONS
RECOMMENDING DISMISSAL OF
CERTAIN DEFENDANTS AND

11   v.

CLAIMS ONE, TWO, THREE AND FOUR,
WITH LEAVE TO AMEND COUNT ONE

12 CALIFORNIA DEPARTMENT OF
CORRECTIONS AND REHABILITATION,

WITHIN THIRTY DAYS

13  et al.,

14             Defendants.          (Doc. 29)
_____/

15

16        Plaintiffs Shawna Hartmann and Caren Hill, inmates incarcerated at Central California

17 Women's Facility ("CCWF"), by their attorney Barbara McGraw, filed their First Amended

18 Complaint ("complaint") alleging claims under 42 U.S.C. §1983, the Religious Land Use and

19 Institutionalized Persons Act of 2000 (42 U.S.C. § 2000cc *et seq*.) ("RLUIPA"), and California

20 law.  Defendants California Department of Corrections and Rehabilitation, Arnold

21 Schwarzenegger, State of California, CCWF, Matthew Cate, Suzanne Hubbard, Barry Smith,

22 Nola Grannis, Mary Lattimore, Division of Adult Institutions ("DAI"), Division of Community

23 Partnerships ("DCP"), and Del Sayles-Owen now move for dismissal of Plaintiffs' complaint for

24 failure to state a claim.  F.R.Civ.P. §12(b)(6).

25        In accordance with the District Court's order referring this motion to Magistrate Judge

26 Sandra M. Snyder for entry of findings and recommendations (Doc. 57), this Court has reviewed

27 the papers and has determined that this matter is suitable for decision without oral argument

28 pursuant to Local Rule 78-230(h).  Having considered all the written materials submitted, the

Court recommends the dismissal of Defendants Schwarzenegger, Cate, Hubbard, Sayles-Owen, Grannis, Lattimore,  DAI, DCP, CCWF, Smith, and the State of California, as well as Claims One, Two, Three, and Four.  The Court further recommends that Plaintiffs be granted leave to amend Claim One within thirty days.  The District Court's exercise of its pendant jurisdiction over Claim Five should be conditional on Plaintiffs' successful amendment of Claim One.

**I.    Background**

Plaintiffs, both prisoners incarcerated in Central California Women's Facility ("CCWF") at Chowchilla, California, are adherents of the Wiccan religion.  They allege that, because CCWF lacks a paid Wiccan chaplain, they have been denied their constitutionally protected religious rights and freedoms, and are subject to ongoing religious discrimination and substantial burdens on their religion.  Plaintiffs contend that Defendant California Department of Corrections and Rehabilitation ("CDCR") maintains a prison chaplain hiring policy unconstitutionally favoring five faiths, Protestant Christian, Roman Catholic, Jewish, Muslim, and Native American, which Plaintiffs refer to as the "Preferred Faiths."  They seek a declaration that the "Preferred Faiths Policy" is unconstitutional on its face and as applied, and that it violates the Religious Land Use and Institutionalized Persons Act of 2000 (42 U.S.C. § 2000cc et seq.) ("RLUIPA").  Plaintiffs also seek injunctive relief and, as part of their RLUIPA claims, damages.

Plaintiffs admit that a volunteer Wiccan chaplain periodically visits CCWF but contend that these visits are infrequent and inadequate for their religious needs.  Plaintiffs allege that, in the absence of a paid chaplain, they and other Wiccan inmates are forced to forgo religious exercise for long periods.  In particular, they allege that they have  (1) been denied access to clergy, religious services, and rites; (2) been denied access to the chapel or other place of worship; (3) been denied communal religions activities with other Wiccans; (4) been denied or experienced limited access to religious literature and artifacts; (5) experienced destruction of their religious literature and artifacts; (6) been denied adequate funding for religious activities; (7) been denied time off work for religious holidays and services; (8) been denied religious counseling in times of personal crisis; (9) lost opportunities for religious services and visits due to inaccurate scheduling; (10) were denied the benefit of representation in prison decisions on

time and space allocation for religious services and study; (11) been denied chaplain visits during

illness; (12) been denied access to religious materials and books in the absence of a Wiccan

chaplain to advocate on their behalf; (13) experienced discrimination because of their beliefs;

(14) been denied regular, ongoing religious education by a Wiccan chaplain; (15) been denied the

opportunity to designate a religious preference of "Wiccan" (Hartmann); and (16) been denied

passes to Wiccan services.  They further allege that, in the absence of a paid chaplain, their

interests are not represented to prison officials in the same way as are the interests of adherents to

the "Preferred Faiths."

Plaintiffs name as Defendants CDCR; California State Personnel Board; State Personnel

Board members Sean Harrigan, Richard Costigan, Patricia Clarey, Maely Tom, and Anne

Sheehan;[1]  Division of Adult Institutions ("DAI"); Division of Community Partnerships

("DCP"); CCWF; CDCR Secretary Matthew Cate; DAI Director Suzan Hubbard; DCP Director

Del Sayles-Owen; DCP employee Barry Smith, a community resource manager; Nola Grannis,

Chief, Inmate Appeals Branch; Mary Lattimore, Warden, CCWF; California Governor Arnold

Schwarzenegger; and the State of California.  Plaintiffs allege claims for violation of the

Establishment Clause, the Equal Protection Clause, the Free Exercise Clause, the Religious Land

Use and Institutionalized Persons Act (42 U.S.C. §§ 2000cc, *et seq*) ("RLUIPA"), and Article I,

Section 4 of the California Constitution.  They seek damages and declaratory and injunctive

relief.

## II.   Applicable Law

### A.   Applicable Regulations

Although Plaintiffs refer generally to the "Preferred Faiths Policy," and to CDCR's

responsibility to provide for inmates' religious and spiritual welfare, they do not cite to any

written authority.  CDCR's regulations require heads of institutions to make "every reasonable

effort to provide for the religious and spiritual welfare of all interested inmates."  Cal. Code

Regs., title 15 § 3210.  Reasonable efforts may include employing chaplains, using volunteer

---

[1] In a separate motion, this Court has recommended that California State Personnel Board and its board members be dismissed from this action (Doc. 64).  Accordingly, these Defendants are not addressed by this memorandum.

chaplains, providing space to conduct services, and modifying inmate's work schedules to attend religious services.  *Id.*

Chaplain appointments are governed by CDCR's Operations Manual, § 31060.6.1, which provides:

> All chaplain appointments shall be approved by the appropriate Regional Administrator, ID.
>
> The applicant shall meet the criteria outlined in the SPB specifications before being appointed to the position of full-time or intermittent chaplain.
>
> Muslim Chaplain.  The appointee shall be currently in good standing with the American Muslim Community, verified and approved by the local resident Imam where the applicant attends as a member.  All candidates shall attach to their application a letter of certification of good standing issued by the local resident Imam.
>
> Jewish Chaplain.  The appointee shall be accredited by and in good standing with a recognized California rabbinical body.  The two official ecclesiastical endorsing agencies are the Board of Rabbis of Northern California and the Board of Rabbis of Southern California.
>
> Catholic Chaplain.  The appointee shall be duly accredited by and in good standing with the Roman Catholic Church and approved by the Bishop of the diocese in which the facility is located.
>
> Protestant Chaplain.  The appointee shall be currently ordained, duly accredited and in good standing with a nationally recognized Protestant denomination.
>
> Native American Spiritual Leader.  The appointee shall be currently recognized as a spiritual leader and in good standing with their Native American Tribe, Nation, Band or Rancheria.  All candidates shall attache to their application a letter of certification of good standing issued by their Native American Tribe, Nation, Band or Rancheria.
>
> **Intermittent Chaplains**
>
> The Department may employ, under State civil service, intermittent Catholic, Jewish, Muslim and Protestant chaplains.
>
> **Part-Time Chaplains**
>
> The Department may contract with clergy of any faith as part-time or intermittent chaplains to provide religious services and chaplaincy activities for a small group.
>
> **Substitute Chaplains**
>
> When a staff chaplain is on an authorized absence and a substitute chaplain cannot be obtained without cost to the State, a fee can be paid to the substitute for any single day of service.

///

**B.    Standard of Review**

To survive a motion to dismiss for failure to state a claim (F.R.Civ.P. 12(b)(6)), a plaintiff must allege sufficient facts to state a claim that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle him to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), *citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Palmer v. Roosevelt Lake Log Owners Ass'n*, 651 F.2d 1289, 1294 (9th Cir. 1981).  Nonetheless, the Court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.), *cert. denied*, 454 U.S. 1031 (1981).

**C.    Pleading Standards**

At its most basic level, evaluating whether a complaint states a claim against a particular defendant requires its analysis in light of applicable pleading standards.   "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies here. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002).  Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a).  "The plaintiff's statement of claim must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512.

In light of the Supreme Court's decisions in *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009), and *Twombly*, 550 U.S. at 555, Plaintiffs' protests that their conclusory allegations meet the *Swierkiewicz* standard can no longer carry the day.  Although detailed factual allegations are not required, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949, *citing Twombly*, 550 U.S. at 555.  "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555, *quoting* C. Wright & A. Miller, Federal Practice and Procedure, § 1216, pp. 235-36

1  (3d ed. 2004).   In *Twombly*, the Court explicitly abrogated its holding in *Conley*, 355 U.S. at 45-

2  46, on which Plaintiffs rely, which stated that "a complaint should not be dismissed for failure to

3  state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support

4  of his claim which would entitle him to relief."  *Twombly*, 550 U.S. at 555.

5  "A plaintiff must set forth sufficient factual matter accepted as true, to 'state a claim that

6  is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949, *quoting Twombly*, 550 U.S. at 555.   A claim

7  has facial plausibility if the pleaded factual allegations allow the Court to reasonably infer that

8  the defendant is liable for the alleged wrongdoing.  *Twombly*, 550 U.S. at 556.  Plausibility must

9  be distinguished from probability.  *Iqbal*, 129 S.Ct. at 1949.  A claim must do more than allege a

10  "possibility that a defendant has acted unlawfully" or plead facts that are "merely consistent

11  with" a defendant's liability, it must establish the plaintiff's "entitlement to relief."  *Id.*  A

12  reasonable inference requires the complaint to plead sufficient facts to support the complaint's

13  allegations.  *Twombly*, 550 U.S. at 555.

14  Implementing the *Twombly* analysis requires the Court to apply two working principles.

15  *Iqbal*, 129 S.Ct. at 1949.  First, while factual allegations are accepted as true, legal conclusions

16  are not.  *Iqbal*, 129 S.Ct. at 1949**.**  The Court may not accept as true allegations that are merely

17  conclusory, unwarranted deductions of fact, or unreasonable inferences.  *Sprewell v. Golden*

18  *State Warriors*, 266 F.3d 979, 988, *amended on denial of rehearing*, 275 F.3d 1187 (9th Cir.

19  2001).  In the context of a motion to dismiss, this means that, although the Court must accept all

20  factual allegations as true, it must identify and disregard legal conclusions disguised as facts.

21  *Iqbal*, 129 S.Ct. at 1950.

22  Second, the Court must evaluate the allegations in context, drawing on its experience and

23  common sense to determine whether the claim for relief is plausible.  *Id.*  It may begin its

24  analysis by identifying and disregarding conclusory allegations that lack a factual basis since

25  these are not entitled to a presumption of truth.  *Iqbal*, 129 S.Ct. at 1949-1951.  The Court may

26  assume the veracity of well-pleaded allegations but must then "determine whether they plausibly

27  give rise to an entitlement to relief."  *Id.* at 1950.

28  ///

6

1   "Factual allegations must be [sufficient] to raise a right to relief above the speculative

2   level." *Twombly*, 550 U.S. at 555 (*citations omitted*).  A plaintiff must set forth "the grounds of

3   his entitlement to relief," which "requires more than labels and conclusions, and a formulaic

4   recitation of the elements of a cause of action."  *Id.* at 555-56 (*internal quotation marks and*

5   *citations omitted*).  To adequately state a claim against a defendant, a plaintiff must set forth the

6   legal and factual basis for his claim.  *Id.*  In applying the principles that the Supreme Court set

7   forth in *Iqbal* and *Twombly*, if Plaintiffs have not "nudged their claims across the line from

8   conceivable to plausible, their complaint must be dismissed."  *Id.* at 570.

9          Plaintiffs' sixteen-point list of the "infringements, violations, and burdens" experienced

10  by Wiccan inmates is just the type of conclusory pleading that the Supreme Court sought to

11  remedy in *Twombly* and *Iqbal*.  The complaint lists the general categories of wrongs alleged by

12  the Plaintiffs but includes no specific legal or factual allegations necessary to give rise to

13  cognizable claims.  Nor do Plaintiffs link these alleged wrongs to their specific claims or explain

14  why these wrongs constitute constitutional violations.

15         **D.      Linking Defendants with Claims**

16         Plaintiffs must also tie each Defendant's actions to the specific harms that he or she is

17  alleged to have caused to Plaintiffs.  Section 1983 provides:

18         Every person who, under color of [state law] . . . subjects or causes to be
           subjected, any citizen of the United States . . . to the deprivation of any rights,
19         privileges, or immunities secured by the Constitution . . . shall be liable to the
           party injured in an action at law, suit in equity, or other proper proceeding for
20         redress.

21         42 U.S.C. § 1983.

22         Section 1983 plainly requires an actual connection or link between each defendant's

23  actions and the harm allegedly done to the plaintiff.  *See Monell v. Department of Social*

24  *Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976).  "A person 'subjects'

25  another to the deprivation of a constitutional right, within the meaning of §1983, if he does an

26  affirmative act, participates in another's affirmative act or omits to perform an act which he is

27  legally required to do that causes the deprivation of which complaint is made."  *Johnson v. Duffy*,

28  588 F.2d 740, 743 (9th Cir. 1978).

1    A plaintiff can establish a defendant's "requisite causal connection" either by detailing

2  that defendant's direct, personal participation in an act or omission, or by demonstrating that the

3  defendant knowingly set in motion a series of acts by others that the defendant knew or

4  reasonably should have known would cause the others to inflict constitutional injury on the

5  plaintiff.  Id. at 988.  A defendant cannot be liable under § 1983 unless an affirmative link or

6  connection exists between that defendant's actions and the claimed injury to the plaintiff.  *May*

7  *v. Enomoto*, 633 F.2d 164, 167 n. 3 (9th Cir. 1980); *Johnson*, 588 F.2d at 743.  In addition,

8  applicable standards of pleading contemplate that allegations of the complaint will permit the

9  Court and each defendant to identify the claims being made against each defendant.

10    Little rhyme or reason is apparent in Plaintiffs' choice of which Defendants to name in

11  relation to the individual claims of the complaint.  In some instances, selection of a particular

12  Defendant or the decision to sue that Defendant in his or her personal capacity appears to relate

13  more to perceived animosity between that Defendant and Plaintiffs (or Wiccans as a group) than

14  to any specific actions that the Defendant has taken with regard to personnel or resources made

15  available for Wiccan religious practice.  To the extent that Plaintiffs fail to allege with specificity

16  the acts of a particular Defendant that link that Defendant to a particular claim, they fail to allege

17  a cognizable claim against that Defendant.  In addition, although each of Plaintiffs' claims rest on

18  their contention that the "Preferred Faiths policy" unconstitutionally discriminates against

19  Wiccans in multiple ways, the complaint evinces little common sense in identifying Defendants

20  who have responsibility for the policy or who have any power or responsibility to amend the

21  regulation memorializing the alleged policy.

22    **E.    The Court's Role**

23    The complaint invites this Court to substitute itself as manager of chaplaincy services in

24  CDCR institutions.  Courts should avoid "unnecessary interference . . . with proper and validly

25  administered state concerns."  *Harrison v. National Ass'n for the Advancement of Colored*

26  *People*, 360 U.S. 167, 176 (1959).  The administration of state prisons and the adoption of rules

27  and regulations governing state prisons are matters of special state interest, even in the context of

28  religious freedom.  *Horn v. People of California,* 321 F.Supp. 961, 963 (E.D.Cal. 1968), *aff'd,*

436 F.2d 1375 (9th Cir. 1970), *cert. denied sub nom McGee v. Horn*, 401 U.S. 976 (1971). "Federal courts sit not to supervise prisons but to enforce the constitutional rights of all 'persons,' including prisoners." *Cruz v. Beto*, 405 U.S. 319, 321 (1972).  Courts must accord to prison officials latitude in their administration of prison affairs.  *Id.*  Thus, although this Court stands ready to address claims that prisoners are subjected to unconstitutional discrimination, any plaintiff seeking relief from this Court must allege cognizable claims, not merely invite the Court to interfere with prison administration on the basis of tenuous allegations and innuendo.

**III.    Sufficiency of Claims**

    **A.    Complaint in General**

In their motion to dismiss, Defendants charge that the complaint is unduly complex, obfuscating Plaintiffs' claims and the facts supporting them in multiple layers of rhetoric and failing to allege wrongs against the Plaintiffs that merit relief under 42 U.S.C. § 1983 and RLUIPA. The Court agrees that the complaint is unduly complex and confusing**,** and that its objective(s) are unclear.  This is because Plaintiffs are attempting both to challenge the policies and procedures for hiring chaplains throughout CDCR and to seek redress for alleged constitutional wrongs against Plaintiffs personally.  In pursuing these ambitious objectives, Plaintiffs fail to fully develop the necessary factual background needed to support their claims and name excessive, redundant, and unlinked Defendants who Plaintiffs seemingly imagine will be important actors carrying out the declarations and injunctions that they seek.

    **B.    Specific Defendants**

Whether sued in their official or personal capacity or both, all individual Defendants are named in all five claims.  The State of California, CCWF, CDCR, DAI, and DCP are named only in the RLUIPA claim (Claim Four).  Defendants contend that many of the named Defendants are not appropriately included within the complaint.  This Court has previously recognized the complaint's unnecessarily broad reach, having recommended dismissal of the California State Personnel Board and its board members on March 15, 2010 (Doc. 64).

///

///

1    **1.    Defendants Schwarzenegger, Cate, Hubbard, and Sayles-Owen**

2            Defendants contend that, in the absence of any factual allegations against Defendants

3    Schwarzenegger, Cate, Hubbard and Sayles-Owen, Plaintiffs' claims against these Defendants

4    must be dismissed.  The Court agrees.  Because the complaint's allegations merely identify

5    Schwarzenegger (¶ 30), Cate (¶ 19), and Hubbard (¶ 25), then say nothing more, the undersigned

6    recommends that these Defendants be dismissed from the lawsuit.  First Amended Complaint

7    (Doc. 19).  Although the complaint both identifies Sayles-Owen (¶ 26) and alleges that he issues

8    directives regarding religious accommodations that are expected to be obeyed (¶ 51), because it

9    makes no factual allegations linking Sayles-Owen to any of  Plaintiffs' claims, he, too, should be

10   dismissed.

11           **2.    Hearing Officers**

12           Plaintiffs' claims against Defendant Grannis and the majority of their claims against

13   Defendant Lattimore are based on Grannis's and Lattimore's roles in Plaintiffs' grievance

14   hearings.  Liability in a §1983 action may not be based on the actions of prison personnel in

15   reviewing a prisoner's administrative appeal.  *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.

16   1993).

17           Even if a plaintiff's underlying complaint gives rise to a Constitutional violation, a

18   hearing officer does not violate the Constitution by failing to acknowledge and cure it.  *George v.*

19   *Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007).  *See also Greeno v. Daley*, 414 F.3d 645, 656-57 (7th

20   Cir. 2005) (complaint examiners who process and investigate plaintiffs' grievances not liable);

21   *Reed v. McBride*, 178 F.3d 849, 851-52 (7th Cir. 1999) (supervisors who negligently fail to detect

22   and prevent misconduct not constitutionally liable); *Vance v. Peters*, 97 F.3d 987, 992-93 (7th

23   Cir. 1996), *cert. denied,* 520 U.S. 1230 (1997) (individual only liable if he caused or participated

24   in constitutional violation).  Accordingly, this Court recommends dismissal of all claims against

25   Grannis and all claims against Lattimore that arise from Lattimore's role in the administrative

26   appeals process.

27   ///

28   ///

1         **3.**     **Personal-Capacity and Official-Capacity Defendants**

2         **a.**     **In General**

3       Plaintiffs sue all individual Defendants in their official capacities.  In addition, Plaintiffs

4 sue Smith in his personal capacity, and Plaintiff Hill sues Lattimore in her personal capacity.

5 Defendants contend that, since Plaintiffs make no allegations against Smith and Lattimore in

6 their personal capacities, those claims should be dismissed.

7       "Personal-capacity suits . . . seek to impose individual liability upon a government officer

8 for actions taken under color of state law."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Suever v.*

9 *Connell*, 579 F.3d 1047, 1060  (9th Cir. 2009).  In contrast, suing a defendant in his official

10 capacity is generally an alternative means of suing the entity of which the defendant is an officer

11 or agent.  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  "As long as the governmental

12 entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects

13 other than name, to be treated as a suit against the entity."  *Id.* at 166.  The real party in interest is

14 the entity, not the official named.  *Id.*  An award of damages against an official in his personal

15 capacity is properly recovered from the official's personal assets; in an official-capacity suit, the

16 plaintiff recovers his damages award from the government entity.  *Id.*

17       To establish personal liability in a § 1983 action, a plaintiff need only show that an

18 official acting under color of state law deprived him or her of a federal right.  *Id.*  A defendant in

19 a personal-capacity claim may be able to assert personal immunity defenses, such as reasonable

20 reliance on existing law.  *Id.* at 167.  In contrast, because the governmental entity is liable in an

21 official-capacity claim, a plaintiff must demonstrate that the entity's policy or custom played a

22 part in the violation of the plaintiff's rights.  *Id.*  When officials sued in their official capacities

23 die or leave office, their successors automatically step into their shoes as defendants.  *Hafer*, 502

24 U.S. at 25; *Hoptowit v. Spellman*, 753 F.2d 779, 781-82 (9th Cir. 1985); F.R.Civ.P. 25(d).  Put

25 another way, an official capacity suit against an individual is a suit not against the individual but

26 against her or his office.  *Id.* at 26.  "As such, it is no different from a suit against the State

27 itself."  *Id.*, *quoting Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65 (1989).  The only

28 immunities available in an official-capacity action are those possessed by the entity, such as

Eleventh Amendment immunity. *Kentucky v. Graham*, 473 U.S. at 167.  A state official may be sued in his or her official capacity for prospective injunctive relief. *Id.* at 167. *See also Ex parte Young*, 209 U.S. 123 (1908); *Luke v. Abbott*, 954 F.Supp. 202, 203 (C.D.Cal. 1997).

This Court declines to recommend dismissal of Plaintiffs' claims against Smith and Lattimore simply because Plaintiffs chose to characterize these Defendants' liability as "personal."  Despite language suggesting that Plaintiffs characterized their claims against Smith and Lattimore as personal as an expression of animus, the complaint alleges that acting under color of state law, both Smith and Lattimore deprived Plaintiffs of a federal right.  Nothing more is required to allege personal liability.

**b.    Claims for Injunctive or Declaratory Relief**

When a plaintiff challenges the constitutionality of a state procedure and seeks prospective injunctive or declaratory relief, alleging the personal involvement of a state official whose job duties relate to the procedure is unnecessary. *Chaloux v. Killeen*, 886 F.2d 247, 252 (9th Cir. 1989). *See also Gomez v. Martel*, 2009 WL 2208307 at *2 (E.D. Cal. July 23, 2009)(CIV S-09-0265 MCE GGH P).  A defendant in a suit to enjoin an allegedly unconstitutional practice must simply be able to appropriately respond to court-ordered injunctive relief if the plaintiff prevails. *Ex Parte Young*, 209 U.S. at 157-61; *Chaloux*, 886 F.2d at 251.  If the defendant could not appropriately respond to a court order granting injunctive relief, he or she should be dismissed. *Chaloux*, 886 F.2d at 251.

Defendants argue that because the complaint includes far more defendants than are needed to implement this Court's injunction, should it ultimately issue one, this Court should dismiss those who are redundant or who lack the ability to appropriately respond to an injunctive order.  Plaintiffs respond that a "circle of non-accountability" requires the inclusion of all conceivable defendants to ensure that any injunction issued as a result of their lawsuit is enforced.

This Court will not assume that any Defendant would fail to obey an injunctive order if one were lawfully issued at the conclusion of this litigation.  Accordingly, it must identify which Defendant(s) are necessary to appropriately respond to an injunctive or declaratory order and

recommend dismissal of any Defendant who would be unable to appropriately and completely respond to this Court's injunction or who is redundant.

"Wardens are responsible for the religious programs in the institution and conservation camps." CDCR Operations Manual § 101060.3 (January 1, 2007). The CDCR director has delegated to wardens authority to make civil service appointments. CDCR Operations Manual § 31060.3 (January 1, 2007). Managers and supervisors are responsible to work with the assigned headquarters personnel analyst, the Institutional Personnel Officer (IPO), and business manager to submit accurate job descriptions and organizational charts, to establish and classify new positions, to clarify questionable personnel issues, to take appropriate action for personnel commitments or changes in new or borderline areas, to make appointments consistent with CDCR's EEO policies, to secure representation of women and minorities on hiring panels, to document personnel actions on appropriate forms, and to submit all required quarterly reports. CDCR Operations Manual § 101060.3 (January 1, 2007). Chaplaincy appointments also must be approved by the appropriate Regional Administrator, ID. *Id.*

Because CCWF Warden Lattimore has the authority to make Civil Service appointments at CCWF as well as to direct CCWF's managers and supervisors, she is the proper party to respond to any declaratory or injunctive order entered by this Court with regard to the institution at which Plaintiffs are confined. Because Plaintiffs have not named the Regional Administrator, ID, as a Defendant, CDCR should be included to address those responsibilities reserved to the agency as a whole. All remaining Defendants (DAI, DCP, CCWF, Smith, and the State of California) are unnecessary or redundant, and should be dismissed from Plaintiffs' claims for injunctive or declaratory relief.

### C.   Establishment Clause: First and Fourteenth Amendments to the U.S. Constitution and California Constitution, Article I, Section 4

Plaintiffs bring their first claim under 42 U.S.C. §1983, alleging that the "Preferred Faiths Policy" violates the Establishment Clause: "Congress shall make no law respecting an establishment of religion." U.S. Const., amend. I. The Establishment Clause applies to state action through the incorporation of its principles into the Fourteenth Amendment due process clause. *Everson v. Board of Education*, 330 U.S. 1, 5 (1946); *Cantwell v. Connecticut*, 310 U.S.

296, 303 (1940).  Plaintiffs charge that there is no neutral, unbiased justification to favor some faiths over others and that reasonable persons in the positions of the "official capacity defendants" should have known that.  The allegations in the first claim, alleging violation of the Establishment Clause, and in the second claim, alleging violation of equal protection, are identical.  This section will examine Plaintiffs' allegations in relation to their Establishment Clause claim.

Resolution of the federal Establishment Clause claim also disposes of Plaintiff's Fifth Claim, brought under Article I, Section 4 of the California Constitution.  Because the state provision "coincides with the intent and purpose of the First Amendment establishment clause," both claims are analyzed under the same standard.  *Rouser v. White*, 630 F. Supp.2d 1165, 1193 (E.D.Cal. 2009); *East Bay Asian Local Development Corp. v. State of California*, 24 Cal.4th 693, 718 (2000), *cert. denied*, 532 U.S. 1008 (2001).

### 1.     Establishment Clause, in General

The "establishment of religion" clause of the First Amendment means at least this:  Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another.  Neither can force nor influence a person to go to or remain away from church against his will or force him to profess a belief or disbelief in any religion.  No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or non-attendance.  No tax in any amount, large or small, can be levied to support any religious activities or institutions, whatever they may be called, or whatever form they may adopt to teach or practice religion.  Neither a state nor the Federal Government can, openly or secretly, participate in the affairs of any religious organizations or groups and *vice versa.*

*Everson,* 330 U.S. at 15-16.

*See also Inouye v. Kemna*, 504 F.3d 705, 712-13 (9th Cir. 2007).  "The Establishment Clause . . . prohibits government from appearing to take a position on questions of religious belief.'" *County of Allegheny v. American Civil Liberties Union Greater Pittsburgh Chapter*, 492 U.S. 573, 593-94 (1989).  The Supreme Court has repeatedly held that prison inmates retain the protections of the First Amendment.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

"The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another."  *Larson v. Valente*, 456 U.S. 228, 244 (1982).  *See also Board of Education of Kiryas Joel Village School District v. Grumet*, 512 U.S. 687 (1994).

If an institution provides religious accommodations to inmates, it must do so in a neutral manner. *Rouser*, 630 F.Supp.2d at 1194; *Kiryas Joel Village School District*, 512 U.S. at 696; *Larson*, 456 U.S. at 244.  When state action facially shows a preference for one religion over others, strict scrutiny must be applied.  *Larson*, 456 U.S. at 244.  *See also Hernandez v. Commissioner of Internal Revenue*, 490 U.S. 680, 695 (1989); *Rouser*, 630 F.Supp.2d at 1195; *Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 334-35 (1987), *quoting Hobbie v. Unemployment Appeals Comm'n of Florida*, 480 U.S. 136, 145 (1987).

This does not mean that a prison must "employ chaplains representing every faith with at least one adherent among the prison population." *Johnson-Bey v. Lane*, 863 F.2d 1308, 1310 (7th Cir. 1988).  *See Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972)*per curiam); *Allen v. Toombs*, 827 F.2d 563, 568-69 (9th Cir. 1987).  Indeed, the sheer number of religious sects within the United States militates against requiring prisons to provide a clergyman for each faith represented among the inmates.  *Gittlemacker v. Prasse*, 428 F.2d 1, 4 (3d Cir. 1970).  Employing chaplains of some faiths, but not others, does not constitute an establishment of religion.  *Horn*, 321 F.Supp. at 965.  "On the other hand the prison may not, because it is contemptuous or unreasonably fearful of a particular sect, place arbitrary obstacles in the way of inmates seeking to participate in the sect's modes of observance." *Johnson-Bey*, 863 F.2d at 1311.  *See Cruz*, 305 U.S. at 322.  "Prisons are entitled to employ chaplains and need not employ chaplains of each and every faith to which prisoners might happen to subscribe, but may not discriminate against minority faiths except to the extent required by the exigencies of prison administration." *Johnson-Bey*, 863 F.2d at 1312.

Plaintiffs contend that CDCR's regulation providing for full-time paid chaplains for Catholics, Protestants, Jews, Muslims, and Native Americans, but part-time or volunteer chaplains for other faiths, constitutes such a breach of religious neutrality. As Judge Karlton expressed the nature of their contention in a similar Establishment Clause claim brought by another Wiccan inmate, "the issue plaintiff[s raise] is not whether prison chaplaincies violate the Establishment Clause, but whether it is violated when the prison provides paid chaplains for only a small handful of religions." *Rouser*, 630 F.Supp.2d at 1195.  Because Section 31060.6.1

provides for full-time paid positions for Muslim, Jewish, Catholic, Protestant, and Native American chaplains, it favors these faiths over other faiths, all of which  are limited either to part-time or volunteer positions.  Accordingly, Plaintiffs would have stated a claim for violation of the Establishment Clause if they had named appropriate Defendants and alleged facts linking each Defendant to the claimed violation.

With regard to the federal claim set forth in Claim One, Plaintiffs name as Defendants Cate, DAI Director Hubbard, DCP Director Sayles-Owen, Smith, Grannis, Warden Lattimore, and Governor Schwarzenegger.  All of these Defendants, with the exception of Warden Lattimore, should be dismissed for other reasons discussed elsewhere in these Findings and Recommendations.  Lattimore neither promulgated the rule, is in a position to amend it, or is otherwise tied to Plaintiff's Establishment Clause allegations.  *See, e.g., Cruz*, 405 U.S. at 320 (addressing the plaintiff's claim that the defendants promulgated customs and regulations violative of plaintiff's constitutional rights).  Because Claim One fails to identify any Defendant linked to the alleged wrong, Claim One, as it is presently written, fails to state a cognizable federal claim for violation of the Establishment Clause and should be dismissed.   Because substitution of one or more appropriate Defendants would render the claim cognizable, however, this Court recommends that Plaintiffs be given leave to amend Claim One.

With regard to Claim Five, alleging violation of Article I, Section 4 of the California Constitution, Plaintiffs name as Defendants CDCR, DAI, DCP, CCWF, Cate, DAI Director Hubbard, DCP Director Sayles-Owen, Smith, Grannis, Warden Lattimore, and the State of California.  All of these Defendants, with the exception of CDCR and Warden Lattimore, should be dismissed as discussed elsewhere in these Findings and recommendations.   Because CDCR is the entity that promulgated and has the power to amend the provisions of its regulations and Operations Manual, Plaintiffs state a cognizable state constitutional claim against CDCR.  Once again, however, because Defendant Lattimore neither promulgated the Operations Manual, has the power to change it, nor is otherwise linked to the alleged state constitutional violation, Claim Five is appropriately dismissed with regard to her.

///

This Court's jurisdiction over Plaintiffs' state claims depends on their successfully amending Claim One to allege the liability of an appropriate Defendant. Section 1983 does not provide a cause of action for violations of state law. *See Weilburg v. Shapiro*, 488 F.3d 1202, 1207 (9th Cir. 2007)*; Galen v. County of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007); *Ove v. Gwinn*, 264 F.3d 817, 824 (9th Cir. 2001); *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997); *Lovell v. Poway Unified School Dist.*, 90 F.3d 367, 370 (9th Cir. 1996); *Draper v. Coombs*, 792 F.2d 915, 921 (9th Cir. 1986); *Ybarra v. Bastian*, 647 F.2d 891, 892 (9th Cir.), *cert. denied*, 454 U.S. 857 (1981). Pursuant to 28 U.S.C. § 1367(a), however, in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367 (c)(3). The Supreme Court has cautioned that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." *United Mine Workers of Amer. v. Gibbs*, 383 U.S. 715, 726 (1966). In the absence of any federal claim, the California Court is the appropriate entity to evaluate Plaintiffs' state claim. *See Duffy v. State Personnel Board*, 232 Cal.App.3d 1, 9 (1991)("When appropriate we may interpret rights set forth in our Constitution by a different standard than that applicable to similarly worded clauses in the federal Constitution so long as those rights extend equal or greater protection to those guaranteed by the federal Constitution.").

### B.   Equal Protection Claim

"The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985), *citing Plyler v. Doe*, 457 U.S. 202, 216 (1982). A prisoner is entitled "to 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow

prisoners who adhere to conventional religious precepts.'"  *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008), *quoting Cruz*, 405 U.S. at 321-22.  To state a claim, a plaintiff must allege facts sufficient to support the claim that prison officials intentionally discriminated against him on the basis of his religion by failing to provide him a reasonable opportunity to pursue his faith compared to other similarly situated religious groups.  *Cruz*, 405 U.S. at 321-22; *Shakur*, 514 F.3d at 891; *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), *cert. denied*, 543 U.S. 825 (2004); *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *overruled in part on other grounds* by *Shakur*, 514 F.3d at 884-85.

That equal protection requires reasonable opportunities for all inmates to exercise their religious beliefs does not mean that all religions must receive identical treatment and resources. *Cruz*, 405 U.S. at 322 n. 2.  "The Constitution does not require that each religious group be treated identically; good faith accommodation in light of practical considerations is all that is required." *Glasshofer v. Thornburgh*, 514 F.Supp. 1242, 1246 (E.D. Pa.1981), *aff'd*, 688 F.2d 821 (3d Cir. 1982).  Prison officials are not required to provide a special place of worship or a chaplain, priest or minister without regard to group size or the extent of demand.  *Id.*  Equal protection requires only that each inmate must have a reasonable opportunity to exercise his or her religious freedom, as guaranteed by the First and Fourteenth Amendments, without fear of penalty.  *Id.* This means that prison officials may provide different religious groups with space of varying sizes or with varying amenities or with full-time, part-time or volunteer religious advisors.  *Id.  See also Adkins v. Kaspar*, 393 F.3d 559, 566 (5th Cir. 2004), *cert. denied*, 545 U.S. 1104 (2005) (holding that equal protection does not mean that every religious group within a prison must have identical facilities or personnel); *Campbell v. Alameida*, 295 Fed.Appx. 130, 131 (9th Cir. 2008)(affirming district court's denial of non-Muslim inmate's equal protection claim arising from his demand to possess Muslim prayer oil since he was not similarly situated to those inmates (Muslims) who were permitted to possess it).

A plaintiff claiming a violation of equal protection bears the burden of proving that he or she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Thornton v. City of St. Helens*, 425 F.3d 1158,

1167 (9th Cir. 2005).  *See also Dillingham v. Immigration and Naturalization Service*, 267 F.3d

996, 1007 (9th Cir. 2001).  Plaintiffs contend that their sixteen-point list of infringements,

violations, and burdens imposed upon Wiccan inmates constitutes evidence of the equal

protection violation.  Plaintiffs provide no factual allegations, however, to establish that these

infringements, violations, and burdens actually occurred or that other religious groups, including

those served by paid, full-time chaplains, did not experience similar difficulties.  *See McCollum*

*v. California*, 610 F.Supp.2d 1053, 1057-58 (N.D.Cal. 2009) (refusing to accept Wiccan

chaplain's assumption that difficulties that he encountered were not common to all volunteer

clergy).

Plaintiffs further allege that they are entitled to a paid full-time chaplain since it appears

to them the number of practicing Wiccans meets or exceeds those of other sects that are provided

with paid full-time chaplains.  No specific figures attesting to the numbers of inmates practicing

any religions at CCWF are alleged.  It does not matter.  Prisons need not maintain

"comprehensive records as to the religious composition of their populations and . . . allocate

resources for religious activities accordingly."  *Thompson v. Commonwealth of Kentucky*, 712

F.2d 1078, 1081 (6th Cir. 1983).  Not only would such a requirement spawn continual legal

challenges to the fairness of the allocation, it would "compel prison officials and courts to

scrutinize the consistency of individual inmates' religious practices and to decide controversies

regarding the precise contours of the various competing religious groups."" *Id.*  In addition, the

constant turnover of inmate populations at prisons would render an attempt to allocate resources

with such precision impracticable.  *Id.*  The end result would be to embroil prison officials and

courts in "dangerous and inappropriate areas of inquiry."  *Id.*

Because prison officials are not required to provide each inmate with the spiritual

counselor of his or her choice, and because CCWF provides Plaintiffs with opportunities for

worship, education and counseling from a volunteer Wiccan chaplain, the Equal Protection

clause is not violated.  *Allen*, 827 F.2d at 568-69.  *See also Gittelmacker*, 428 F.2d at 4

(satisfying the Equal Protection clause requires only a good faith accommodation of an inmate's

///

rights in light of practical considerations).  Accordingly, this Court recommends that because Claim Two fails to state a claim on which relief may be granted, it should be dismissed.

### C.    Free Exercise Claim

Despite their incarceration, prisoners retain their First Amendment rights, including the right to free exercise of religion.  *O'Lone*, 482 U.S. at 348; *Bell v. Wolfish*, 441 U.S. 520, 545 (1979).  "[T]he Free Exercise Clause . . . requires government respect for, and noninterference with, the religious beliefs and practices of our Nations's people."  *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005).  Incarceration itself, as well as legitimate correctional goals or security concerns, may limit free religious practice, however.  *O'Lone*, 482 U.S. at 348; *McElyea v. Babbit*, 833 F. 2d 196, 197 (9th Cir. 1987); *Allen*, 827 F.2d at 566 ("Incarceration . . . necessarily brings about the withdrawal or limitation of many of the privileges and rights available to nonprisoners.").

> The right to exercise religious practices and beliefs does not terminate at the prison door.  The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security.

*Id.* at 19.

Prison officials must provide facilities for inmate worship and the opportunity for clergy or spiritual leaders to visit the prison.  *Gittlemacker*, 428 F.2d at 4.  Plaintiffs concede that CCWF provides a volunteer Wiccan chaplain and opportunities for group worship, observance of holidays, and individual services such as education and counseling.   Plaintiffs' claim is that the Free Exercise clause entitles them to more, particularly the presence of a paid, full-time Wiccan chaplain.  The Free Exercise Clause does not require prison officials  to supply full-time clergy at state expense.  *Id.*

Plaintiffs contend that their free exercise rights are violated since, in Plaintiffs' opinion, Wiccan inmates receive less than inmates of other religions.  Whether comparable benefits inure to inmates of different faiths is not the test under the Free Exercise clause. *See, e.g., Glasshofer*, 514 F.Supp. at 1246.  "The Free Exercise Clause guarantees a liberty interest, a substantive right; that clause does not ensure that all sects will be treated alike in all respects."  *Thompson*, 712

F.2d at 1080-81.  Thus, in *Thompson*, the Sixth Circuit concluded that Muslim inmates, who were served by an imam from outside the prison, had not established a free exercise claim and were not entitled to a paid full-time chaplain simply because the prison employed Christian chaplains.

To establish a free-exercise violation, Plaintiffs must show that prison regulations or actions substantially burden their exercise of their religion by preventing their engaging in conduct or having a religious experience required by their faith.  *Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997).  "The free exercise clause does not grant a prisoner the right to visit the clergyman of his choice outside prison walls."  *Reimers v. State of Oregon*, 863 F.2d 630, 631-32 (9th Cir. 1989)., citing *Cruz*, 405 U.S. at 324 (Rehnquist, J., dissenting).  Similarly, the Free Exercise clause does not provide that a prisoner is entitled to have the clergyman of his choice provided for him in prison.  *Johnson v. Moore,* 948 F.2d 517, 520 (9th Cir. 1991)(failure to provide Unitarian Universalist chaplain did not violate free exercise clause where inmate had reasonable opportunity to exercise his faith)*; Reimers*, 863 F.2d at 632.  *See also Cruz,* 405 U.S. at 322 n. 2*; Allen*, 827 F.2d at 569; *Gittlemacker*, 428 F.2d at 4.

Plaintiffs are provided with numerous opportunities for free exercise of their religious beliefs.  That a full-time paid chaplain is not provided for them is not a sufficient basis for a Free Exercise claim.  Accordingly, this Court recommends the dismissal of Claim Three, alleging a violation of Plaintiffs' free exercise rights.

### D.    RLUIPA

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . , even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
>
> > (1) is in furtherance of a compelling government interest; and
> >
> > (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1.

///

1    RLUIPA "mandates a stricter standard of review for prison regulations that burden the

2    free exercise of religion than the reasonableness standard under *Turner*." *Shakur*, 514 F.3d at

3    888, *citing Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). "RLUIPA requires the

4    government to meet the much stricter burden of showing that the burden it imposes on religious

5    exercise is in furtherance of a compelling governmental interest; and is the least restrictive means

6    of furthering that compelling governmental interest." *Greene v. Solano County Jail*, 513 F.3d

7    982, 986 (9th Cir. 2008)(*citation and internal quotations omitted*). *See also Alvarez v. Hill*, 518

8    F.3d 1152, 1156-57 (9th Cir. 2008). "RLUIPA . . . protects institutionalized persons who are

9    unable freely to attend to their religious needs and are therefore dependent on the government's

10   permission and accommodation for exercise of their religion." *Cutter*, 544 U.S. at 721.

11   RLUIPA defines religious exercise to include "any exercise of religion, whether or not

12   compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); *San Jose*

13   *Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004). *See also Civil*

14   *Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 760 (7th Cir. 2003), *cert. denied*,

15   541 U.S. 1096 (2004) (noting that "[t]his definition reveals Congress's intent to expand the

16   concept of religious exercise contemplated both in decisions discussing the precursory RFRA . . .

17   and in traditional First Amendment jurisprudence."). Courts are expected to apply RLUIPA with

18   "due deference to the experience and expertise of prison and jail administrators in establishing

19   necessary regulations and procedures to maintain good order, security and discipline, consistent

20   with consideration of costs and limited resources." Joint Statement 16699, *quoting* S.Rep. No.

21   103-111, at 10, U.S.Code Cong. & Admin. News 1993, pp. 1892, 1899, 1900.

22   In the first step in analyzing a RLUIPA claim, the plaintiff bears the burden of

23   demonstrating that the governmental action imposes a substantial burden on religious exercise.

24   *Adkins*, 393 F.3d at 567. A "substantial burden" imposes "a significantly great restriction or

25   onus" upon religious exercise. *San Jose Christian College*, 360 F.3d at 1034. The Supreme

26   Court has found a substantial burden occurs "where the state . . . denies [an important benefit]

27   because of conduct mandated by religious belief, thereby putting substantial pressure on an

28   adherent to modify his behavior and to violate his beliefs." *Warsoldier*, 418 F.3d at 995. For

example, Warsoldier, a Native American inmate whose religion forbid routine cutting of hair, was subjected to a series of punishments, including confinement to cell, imposition of additional duty hours, loss of telephone and outdoor recreation privileges, reclassification into a workgroup with fewer privileges, and limitations on his allowance and commissary privileges, as punishment for his noncompliance with prison grooming regulations. *Id.* at 995-96. The punishments were intended to induce Warsoldier to abandon his religious beliefs and conform to prison rules. *Id.* at 996. An outright ban on a particular religious exercise is always a substantial burden on religious exercise. *See Greene*, 513 F.3d at 988 (addressing a ban of a maximum security inmate's participation in group worship services), *and the cases cited therein*.

In contrast, an institution's failure fully to provide all the benefits that an inmate desires for religious accommodation is not a substantial burden when the institution has provided a satisfactory accommodation. *Sefeldeen v. Alameida*, 238 Fed. Appx. 204, 206 (9th Cir. 2007). Although the prison provided Sefeldeen, a Muslim inmate, with a vegetarian menu consistent with Halal requirements, Sefeldeen sought a Halal meat diet, arguing that a vegetarian diet was nutritionally inadequate. *Id.* at 206. Because Sefeldeen was unable to demonstrate any adverse health effects, the court concluded that he had not established the imposition of a substantial burden. *Id.*

In *Shakur*, 514 F.3d at 882, 893, however, the Ninth Circuit reversed and remanded a case in which a Muslim inmate sought to substitute a kosher diet (which he deemed religiously satisfactory) for a Halal vegetarian diet, alleging that the vegetarian diet gave him gas and aggravated his hiatal hernia, precluding the state of "purity and cleanliness" necessary for Muslim prayer. The circuit court directed the district court to determine on remand whether Shakur's digestive problems significantly pressured him to abandon his religious beliefs, rendering the vegetarian diet a substantial burden. *Id.* at 889. The complaint includes no factual allegations sufficient to permit a finding that Plaintiffs' exercise of their religious beliefs was so burdened as to pressure them to abandon their beliefs.

Instead, as previously discussed, Plaintiffs seek more benefits for their religious practice, specifically a full-time paid Wiccan chaplain. RLUIPA prohibits prison officials from

23

substantially burdening religious practice, but its text does not require prison officials to take affirmative action to facilitate a prisoner's religious practice, such as by hiring clergymen to minister to inmates.  Prisoners do not have a constitutional right to the religious advisor of their choice.  *Blair-Bey v. Nix*, 963 F.2d 162, 163-64 (8th Cir.), *cert. denied*, 506 U.S. 1007 (1992). "Only when a prisoner's sole opportunity for group worship arises under the guidance of someone whose beliefs are significantly different from his own is there a possibility that the prisoner's free exercise rights are substantially burdened."  *Weir v. Nix*, 114 F.3d 817, 821 (8th Cir. 1997).

Here, Plaintiffs admittedly have the services of a volunteer Wiccan chaplain and are provided with a variety of opportunities for religious expression.  Even though Plaintiffs would prefer the services of a full-time chaplain and more religious opportunities, their free exercise rights are not substantially burdened.  In the absence of a substantial burden on free exercise, no further RLUIPA analysis is required.

Because the complaint fails to allege a cognizable claim for violation of RLUIPA, this Court recommends dismissal of Claim Four.

**III.   Conclusion and Recommendation**

The undersigned makes the following recommendations based on her findings of fact and conclusions of law:

1.   Because the complaint makes no allegations against them, all claims against Defendants Schwarzenegger, Cate, Hubbard and Sayles-Owen should be dismissed.

2.   Because claims against Defendant Grannis are based on her role as a hearing officer, all claims against Grannis should be dismissed.

3.   Those claims against Lattimore relating to her role as a hearing officer should be dismissed.

4.   Because Defendants DAI, DCP, CCWF, Smith, and the State of California are unnecessary or redundant defendants in Plaintiffs' claims for injunctive or declaratory relief, they should be dismissed as Defendants in those claims.

5.   Claim One, alleging violation of the Establishment Clause, fails to state a cognizable claim as it is presently written.  Because substitution of an appropriate defendant would render the claim cognizable, this claim should be dismissed with leave to amend within thirty days.

6.   Claim Two, alleging violation of Equal Protection under the Fourteenth Amendment, should be dismissed with prejudice.

7.   Claim Three, alleging violation of Plaintiffs' free exercise rights, should be dismissed with prejudice.

8.   Claim Four, alleging violation of RLUIPA, should be dismissed, with prejudice, in its entirety.

9.   Claim Five states a cognizable claim for violation of Article 1, Section 4 of the California Constitution.  Federal court jurisdiction over this claim is appropriately exercised only if Plaintiffs successfully amend Claim One to state a cognizable claim.  If Plaintiffs fail to amend Claim One, this Court recommends that the District Court decline to exercise pendant jurisdiction over Claim Five.

These findings and recommendations are submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). Plaintiffs are advised that failure to file objections within the specified time may waive their right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   April 27, 2010**                          **/s/ Sandra M. Snyder**
                                                                 UNITED STATES MAGISTRATE JUDGE