**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

SHAWNA HARTMANN, et al.,

Plaintiffs,

vs.

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,

Defendants.
____________________________________/

CASE NO. CV F 10-0045 LJO SMS

**ORDER ON DEFENDANTS' F.R.Civ.P. 12 MOTION TO DISMISS THIRD AMENDED COMPLAINT**
(Doc. 101.)

## INTRODUCTION

Defendants California Department of Corrections and Rehabilitation ("CDCR") and Matthew Cate ("Secretary Cate"), the CDCR Secretary, seek to dismiss as violating F.R.Civ.P. 8 pleading standards plaintiffs' claims for Wiccan clergy at the CDCR prisons where plaintiffs are incarcerated. Plaintiffs respond that their operative complaint cures prior pleading deficiencies and puts CDCR and Secretary Cate (collectively "defendants") "on clear notice of the claims against them." This Court considered defendants' F.R.Civ.P. 12(b)(6) motion to dismiss on the record without a hearing, pursuant to Local Rule 230(g), (1). For the reasons discussed below, this Court DISMISSES this action.

## BACKGROUND[1]

### Summary

Plaintiff Caren Hill ("Ms. Hill") is incarcerated at the Central California Women's Facility ("CCWF") in Chowchilla. Plaintiff Shawna Hartmann ("Ms. Hartmann") has been incarcerated at CCWF and is currently incarcerated at the Correctional Institution for Women in Corona. Ms. Hill and Ms. Hartmann (collectively "plaintiffs") have been "adherents of the Wiccan faith" for eight years.

CDCR oversees California's adult correctional institutions and "is responsible for establishing and maintaining its religious accommodation policies, procedures, and customs." Secretary Cate is responsible for CDCR administration, including "to ensure that the CDCR religious accommodation policies comply with and do not violate federal and state constitutions and statutory requirements."

### Preferred Faiths Policy

Defendants apply a "non-neutral" policy that unconstitutionally prefers the hiring of clergy only for Protestant, Catholic, Jewish, Muslim and Native American faiths ("Preferred Faiths"). CDCR "does not administer the provisions of chaplains or other religious accommodations to prison inmates of different faiths according to neutral and fair methods or criteria." The CDCR's "arbitrary hiring policy . . . is based on preferences, discrimination, and bias in violation of the United States and California Constitutions, and amounts to substantial burden on Plaintiffs' religious exercise."

The TAC references a "Preferred Faiths Policy" ("appendix policy")[2] which is attached as six-page Appendix A to the TAC. The appendix policy states that "CDCR has no clearly stated procedural mechanism to designate new chaplain classifications beyond the Preferred Faiths" and that "CDCR policies do not permit the hiring of part-time qualified chaplains to represent faiths other than the Preferred Faiths." The appendix policy further states:

> Consequently, decisions are made about religious accommodations for non-Preferred Faiths inmates on a non-neutral basis. Plaintiffs are informed and believe that CDCR's policy, practice and custom, even more generally, is to rely on personnel who are in the Preferred Faiths and/or are non-religious and who do not have the knowledge or experience to make decisions about religious accommodation of non-preferred faiths,

---

1 The factual recitation is derived generally from plaintiffs' operative Third Amended Complaint for Civil Rights Violations, Injunctive Relief, Declaratory Judgment, and Damages ("TAC").

2 When quoting the TAC, this Court will use the TAC's reference to "Preferred Faiths Policy."

> rather than include decision-makers at least representative of general categories of religions, for example, Dharmic religions (e.g., Buddhism, Hinduism) and Pagan (e.g., Wiccan, Asatru/Odinist). Upon information and belief, despite large numbers of Wiccans in CDCR institutions, including at CCWF, it is Defendants' policy, practice and custom not to retain the services of a qualified Wiccan or even Pagan to serve on any state-wide CDCR committee(s) to inform CDCR officials of the beliefs, practices, and needs of Wiccan (and other Pagan) inmates, even though a highly qualified, internationally recognized Wiccan/Pagan chaplain has been available to provide such information and services for at least thirteen years.
>
> . . .
>
> Plaintiffs are informed and believe that CDCR policies, practices, and customs do not provide for the allocation of the religion programming budget funds on a neutral and equitable basis among the religions represented in CDCR generally or CDCR institutions, such as CCWF, specifically, but rather give preference to the Preferred Faiths without a legitimate justification for doing so.

**Unmet Needs**

The TAC claims that "there have been more inmates practicing the Wiccan religion at CCWF than there have been practicing Jewish and Muslim inmates at CCWF." "Wiccan inmates have at least as great a need for a regularly employed qualified paid chaplain as do inmates in the Preferred Faiths" in that "most Wiccans require ordained clergy to perform certain initiations, blessings, and ceremonies. Wiccans rely on an oral tradition of songs and stories rather than written texts . . . and similarly need access to priests and priestesses who can pass on that tradition." "Wiccan inmates at CCWF go months without any religious accommodation." Defendants have not "assessed the need for a Wiccan chaplain at CCWF, or at any other CDCR correctional institutions, despite knowing for many years that there are large numbers of Wiccan inmates at CCWF and several other CDCR correctional institutions."

The appendix policy has resulted in "lack of Plaintiffs' access to a chaplain of their faith," "denial of Plaintiffs' communal ritual celebrations," lack of plaintiffs' "religious services," "inability to access religious items," and "lack of access to the chapel or other space to practice their religion."

**Plaintiffs' Claims**

The TAC alleges that the appendix policy "establishes the Preferred Faiths in violation of the Establishment Clause of the First Amendment." The TAC further alleges that the appendix policy has denied plaintiffs and other Wiccans to "access to a state-employed, state-budgeted Wiccan chaplain." The TAC's (first) Establish Clause claim alleges that Secretary Cate "has failed to take appropriate actions in accordance with his constitutional duties to ensure that CDCR religious accommodation

policies, procedures, and customs conform to constitutional requirements." The claim further accuses Secretary Cate of taking "no actions to reform the Preferred Faiths Policy to provide equitable allocation of chaplains, scheduled time for communal services and space for religious exercise." The TAC's second claim alleges that "Defendants' conduct constitutes a violation of Article I, § 4 of the Constitution of the State of California" in that the appendix policy has "resulted in substantial burdens on Plaintiffs' religious exercise" and "establishes the Preferred Faiths in violation of the Constitution of the State of California."[3]

The TAC seeks:

1. Declaratory relief that the appendix policy is unconstitutional and that "any chaplaincy hiring policy that would include the Preferred Faiths based on neutral criteria and procedures neutrally applied, would also include the Wiccan religion";
2. Injunctive relief to enjoin defendants "from promulgating and maintaining the Preferred Faiths Policy" and to require defendants to apply "neutral, equitable, and unbiased criteria for hiring CDCR chaplains," to hire chaplains based on such criteria, and to hire "a qualified Wiccan chaplain at CCWF and all other CDCR institutions to which either Plaintiff is transferred";
3. Nominal, compensatory and punitive damages for plaintiffs' "emotional distress, humiliation and dignitary harms"; and
4. Attorney fees.

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

Defendants challenge the TAC as "excessively verbose" with "legal authority and academic discussions" and few factual allegations. Plaintiffs respond that the TAC provides defendants "clear notice" of plaintiffs' claims that the appendix policy violates plaintiffs' federal and California constitutional rights and defendants' "responsibility for such violations and ability to redress such

---

[3] In their opposition papers, plaintiffs summarize that defendants "unconstitutionally prefer" the Preferred Faiths "in the administration of prison religion programming" at CDCR institutions as evidenced by "chaplain hiring, religious items permissions, time and space allocation, and religious accommodation request processes" to result in violation of the First Amendment's Establishment Clause and Article 1, section 4 of the California Constitution.

harms."

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In addressing dismissal, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either

direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

With these standards in mind, this Court turns to defendants' challenges to the TAC.

**<u>Failure To Satisfy F.R.Civ.P. 8 Pleading Requirements</u>**

Defendants contend that the TAC fails to satisfy F.R.Civ.P. 8 pleading requirements in that the TAC is "riddled with conclusions and fails to link any of the alleged general wrongs" to plaintiffs.

Plaintiffs respond that they have properly designated defendants and linked them to constitutional wrongs.

F.R.Civ.P. 8 requires a plaintiff to "plead a short and plain statement of the elements of his or her claim, identifying the transaction or occurrence giving rise to the claim and the elements of the prima facie case." *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000).

F.R.Civ.P. 8(d)(1) requires each allegation to be "simple, concise, and direct." This requirement "applies to good claims as well as bad, and is the basis for dismissal independent of Rule 12(b)(6)." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). "Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *McHenry*, 84 F.3d at 1180. "Prolix, confusing complaints . . . impose unfair burdens on litigants and judges." *McHenry*, 84 F.3d at 1179.

Moreover, a pleading may not simply allege a wrong has been committed and demand relief. The underlying requirement is that a pleading give "fair notice" of the claim being asserted and the "grounds upon which it rests." *Yamaguchi v. United States Department of Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997). Despite the flexible pleading policy of the Federal Rules of Civil Procedure, a complaint must give fair notice and state the elements of the claim plainly and succinctly. *Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984). A plaintiff must allege with at least some degree of particularity overt facts which defendant engaged in to support plaintiff's claim. *Jones*, 733 F.2d at 649. A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, __ U.S. __, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). The U.S. Supreme Court has explained:

> While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant "set out in detail the facts upon which he bases his claim," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (emphasis added), Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Twombly*, 550 U.S. at 556, n. 3, 127 S.Ct. 1955.

Defendants take issue with TAC's 19 pages to allege two claims. Defendants attack the six-page

appendix policy, which is incorporated by reference into the TAC, as "unduly burdensome" and "vague and overly broad" to define the "Preferred Faiths Policy" and in turn to result in "an unnecessarily complex and confusing pleading." Defendants point to the appendix policy's "numerous, vaguely-identified practices and customs pertaining to religious accommodations" and inability to ascertain "what exactly Plaintiffs are pursuing." Defendants question whether the appendix policy seeks to enforce plaintiffs' "religious rights, those of all Wiccan inmates within CDCR, or those of all non-Preferred Faiths inmates within CDCR" or simply "to secure an order requiring CDCR to hire a Wiccan chaplain."

Defendants further challenge the TAC's "labyrinth of vague allegations to determine what the nature of the suit is, what polices are at issue, and what relief" plaintiffs seek. Defendants note their inability to evaluate plaintiffs's standing to assert claims.

In response, plaintiffs devote most of their opposition papers to explain how the TAC satisfies this Court's several orders to reject their prior complaints. Plaintiffs note that the TAC properly designates Secretary Cate "as the single defendant for the Establishment Clause Claim." Plaintiffs claim that the TAC omits "allegations about the nature of the Wiccan religion." Plaintiffs argue that the TAC focuses its allegations on the "disparate treatment of plaintiffs as Wiccans compared to inmates of other religions." Plaintiffs characterize the appendix policy as a set of "policies, practices, and customs" that include "the chaplain hiring policy" to allege "with specificity the policies, practices, and customs that constitute the Preferred Faiths Policy." Plaintiffs further characterize the appendix policy as "sufficient specificity" and defend it given the "pervasive extent of the Preferred Faiths Policy throughout CDCR, not Plaintiffs' excess."

Defendants have correctly evaluated the TAC and its appendix policy. The TAC is confusing and a burden to any reader. The TAC fails to satisfy F.R.Civ.P. 8 requirements to state a short, plain statement of plaintiffs' claims and to provide simple, concise and direct allegations. The TAC and its appendix policy are an exercise in verbosity to obscure potential claims and to confuse what plaintiffs seek. Plaintiffs claims are unclear, and the six-page appendix policy only exacerbates the absence of clarity as to what plaintiffs claim and seek as relief. Conjuring a six-page appendix policy and calling it unconstitutional is unacceptable pleading. Plaintiffs appear unable or unwilling to satisfy F.R.Civ.P.

8 despite the admonishment of this Court's February 18, 2011 order that dismissal will arise "if Plaintiffs file a complaint which fails to comply with this order, prior orders and federal pleading requirements."

The TAC is plaintiffs' fourth pleading attempt. Plaintiffs have had fourth chances to "get it right," that is, comply with F.R.Civ.P. 8. This action has been pending for more than two years.[4] Defendants are in no better position to ascertain potential claims against them as when the original complaint was filed. Plaintiffs have ignored and disobeyed this Court's pleading directives to warrant dismissal of this action.

**Direct Participation**

The TAC's (first) Establishment Clause claims proceeds under 42 U.S.C. § 1983 ("section 1983") against Secretary Cate. The TAC lacks facts of Secretary Cate's direct participation in alleged deprivation of plaintiffs' constitutional rights despite plaintiffs' claim that the TAC links Secretary Cate "to the Establishment Clause violation and resulting harms to Plaintiffs."

***Section 1983 Requirements***

"Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)). Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996 (1976)). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker,* 443 U.S. at 140, 99 S.Ct. 2689 (1979). Stated differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly

---

4 This action originated in this Court's Sacramento Division before it was transferred to the Fresno Division.

infringed. *Albright*, 510 U.S. at 271, 114 S.Ct. at 813. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker*, 443 U.S. at 146, 99 S.Ct. 2689.

The TAC claims that Secretary Cate violated plaintiffs' rights under the Establishment Clause but fails to explain how he did so. Plaintiffs' platitudes in their opposition papers offer nothing to support Secretary Cate's potential section 1983 liability.

***Personal Liability***

"Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230, 117 S.Ct. 1822 (1997); *see Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.") "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused the constitutional deprivation." *Leer*, 844 F.2d at 633. Section 1983 requires that there be an actual connection or link between the defendant's actions and the deprivation allegedly suffered. *See Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978); *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598 (1976).

A plaintiff cannot hold an official liable "because of his membership in a group without a showing of individual participation in the unlawful conduct." *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) (citing *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996)). A plaintiff must "establish the 'integral participation' of the officers in the alleged constitutional violation." *Jones*, 297 F.3d at 935. "'[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation." *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004). Integral participation requires "some fundamental involvement in the conduct that allegedly caused the violation." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481, n. 12 (9th Cir. 2007). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588

F.2d 740, 743 (9th Cir. 1978).

The TAC lacks factual allegations to subject Secretary Cate to section 1983 liability. There are no allegations of Secretary Cate's direct actions, participation in other's acts or failure to perform legally required acts. The TAC rests on generalities which appear in sum to fault failure to recognize Wicca as a meritorious religion and in turn to supply Wiccan clergy. The TAC lacks facts to tie Secretary Cate to the appendix policy. The absence of facts to connect Secretary Cate to an alleged constitutional violation dooms a section 1983 claim against him.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. DISMISSES with prejudice this action;[5] and
2. DIRECTS the clerk to enter judgment in favor of defendants California Department of Corrections and Rehabilitation and Matthew Cate and against plaintiffs Shawna Hartmann and Caren Hill and to close this action.

IT IS SO ORDERED.

**Dated: March 24, 2011** **/s/ Lawrence J. O'Neill**
UNITED STATES DISTRICT JUDGE

---

[5] Given dismissal, this Court need not address defendants' F.R.Civ.P. 12(f) request to strike the declaration of plaintiffs' counsel.