**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SHAWNA HARTMANN and CAREN HILL, *Plaintiffs-Appellants*, v. CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION; CALIFORNIA STATE PERSONNEL BOARD; DIVISION OF ADULT INSTITUTIONS; DIVISION OF COMMUNITY PARTNERSHIPS; CENTRAL CALIFORNIA WOMEN'S FACILITY; MATTHEW CATE; SEAN HARRIGAN; RICHARD COSTIGAN; PATRICIA CLAREY; TOM MAELY; ANNE SHEEHAN; SUZAN HUBBARD; DEL SAYLES-OWEN; BARRY SMITH; NOLA GRANNIS; MARY LATTIMORE, Warden; ARNOLD SCHWARZENEGGER;[*] and THE STATE OF CALIFORNIA, *Defendants-Appellees*. | No. 11-16008 D.C. No. 1:10-cv-00045-LJO-SMS OPINION |

---

[*] Edmund G. Brown, Jr. is substituted for his predecessor, Arnold Schwarzenegger, as Governor of the State of California. Fed. R. App. P. 43(c)(2).

2    HARTMANN V. CALIFORNIA DEP'T OF CORRECTIONS

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted
November 9, 2012—San Francisco, California

Filed February 19, 2013

Before: Ronald M. Gould and Milan D. Smith, Jr.,
Circuit Judges, and Kevin T. Duffy, District Judge.[**]

Opinion by Judge Duffy

---

**SUMMARY**[***]

---

**Prisoner Civil Rights**

The panel affirmed in part and reversed in part the district
court's Fed. R. Civ. P. 12(b)(6) dismissal of an action brought
under 42 U.S.C. § 1983 by California state prisoners alleging
that defendants violated their state and federal constitutional
rights to exercise their religious beliefs by refusing to hire a
paid full-time Wiccan chaplain and by failing to apply neutral
criteria in determining whether paid chaplaincy positions are
necessary to meet the religious exercise needs of inmates

---

[**] The Honorable Kevin Thomas Duffy, United States District Judge for
the Southern District of New York, sitting by designation.

[***] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

adhering to religions outside the five faiths (Catholic, Jewish, Muslim, Native American and Protestant).

Affirming the district court, the panel held that the first amended complaint did not contain sufficient facts to support a cognizable legal theory under the First Amendment's Free Exercise Clause, stating that the Clause did not require prison administration to provide plaintiffs with more than that which they were currently receiving, such as the services of staff chaplains and a volunteer Wiccan chaplain. The panel also held that plaintiffs failed to support their equal protection claim with facts plausibly showing that the prison administration discriminatorily denied their requests for a paid full-time Wiccan chaplain. The panel further held that plaintiffs' claim under the Religious Land Use and Institutionalized Persons Act failed sufficiently to allege a substantial burden on their religious exercise.

Reversing the district court, the panel held that plaintiffs sufficiently pleaded facts supporting plausible claims under the Establishment Clause and the California State Constitution. The panel determined that accepting plaintiffs' allegations as true, the prison administration failed to employ any neutral criteria in evaluating whether a growing membership in minority religions warranted a reallocation of resources used in accommodating inmates' religious exercise needs. The panel remanded both claims to the district court for further proceedings.

## COUNSEL

David C. Kiernan (argued), Jones Day, San Francisco, California; Thomas Ritchie, Jones Day, Chicago, Illinois; and Barbara McGraw, Moraga, California, for Plaintiffs-Appellants.

Michael D. Gowe (argued), Deputy Attorney General, and Fiel D. Tigno, Supervising Deputy Attorney General, for Defendants-Appellees State Personnel Board, Sean Harrigan, Richard Costigan, Patricia Clarey, Tom Maely, and Anne Sheehan.

Kenneth T. Roost (argued), Deputy Attorney General; Jonathan L. Wolff, Senior Assistant Attorney General; and Thomas S. Patterson, Supervising Deputy Attorney General, for Defendants-Appellees California Department of Corrections and Rehabilitation, Division of Community Partnerships, Central California Women's Facility, Matthew Cate, Del Sayles-Owen, Barry Smith, Mary Lattimore, and the State of California.

## OPINION

DUFFY, District Judge:

California prisoners enjoy state and federal constitutional rights to exercise their religious beliefs. The California Department of Corrections and Rehabilitation ("CDCR"), in an effort to meet the religious exercise needs of prison inmates, maintains paid full-time and part-time chaplain positions for adherents of five faiths: Catholic, Jewish, Muslim, Native American, and Protestant (the "Policy").

HARTMANN v. CALIFORNIA DEP'T OF CORRECTIONS    5

Inmates adhering to religions other than these five faiths are permitted to exercise their religious beliefs with the assistance of paid staff chaplains or volunteer chaplains.

Plaintiffs-Appellants Caren Hill and Shawna Hartmann ("Plaintiffs") claim under 42 U.S.C. § 1983 that various entities and individuals violated their rights under the First Amendment's Free Exercise and Establishment Clauses, the Fourteenth Amendment's Equal Protection Clause, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and the California State Constitution, by refusing to hire a paid full-time Wiccan chaplain and by failing to apply neutral criteria in determining whether paid chaplaincy positions are necessary to meet the religious exercise needs of inmates adhering to religions outside the five faiths.

The district court dismissed each of Plaintiffs' federal claims for failing to state a claim upon which relief can be granted. We have jurisdiction under 28 U.S.C. § 1291, and we affirm the district court's dismissal of Plaintiffs' Free Exercise, Equal Protection, and RLUIPA claims. We reverse and remand to the district court Plaintiffs' claims under the Establishment Clause and the California State Constitution for further proceedings consistent with this opinion.

## I.  BACKGROUND

Plaintiff Hill is currently a Wiccan inmate in CDCR custody and incarcerated at the Central California Women's Facility ("CCWF") in Chowchilla, California. Plaintiff Hartmann was a Wiccan inmate in CDCR custody during the

6    Hartmann v. California Dep't of Corrections

period when the alleged harms occurred, but has since been
released.[1]

Plaintiffs filed three amended complaints under 42 U.S.C.
§ 1983. The First Amended Complaint named eighteen
defendants,[2] many of whom are state officials sued in their
official and individual capacities, and included claims that
defendants violated Plaintiffs' rights under the Free Exercise,
Establishment, and Equal Protection Clauses; RLUIPA; and
the California State Constitution. The district court dismissed
Plaintiffs' First Amended Complaint under Federal Rule of
Civil Procedure ("Rule") 12(b)(6) and granted leave to amend
the Establishment Clause claim and the state constitutional
claim. The district court struck Plaintiffs' Second Amended
Complaint for failing to comply with a court order and again
granted leave to amend. Plaintiffs filed a Third Amended

---

[1] Hartmann's release from CDCR custody renders moot her claims for
declaratory and injunctive relief. *See Alvarez v. Hill*, 667 F.3d 1061, 1064
(9th Cir. 2012) (claims seeking injunctive and declaratory relief generally
become moot upon inmate's release from custody because inmate is no
longer subject to the challenged prison conditions or policies).

[2] The defendants include the following: (1) the California State
Personnel Board ("SPB"); the SPB's five board members in their official
capacities—(2) Sean Harrigan; (3) Richard Costigan; (4) Patricia Clarey;
(5) Tom Maeley; and (6) Anne Sheehan ("SPB Members") (collectively,
the "SPB Defendants"); (7) the State of California; (8) CDCR; (9) CDCR
Secretary Cate in his official and individual capacities; (10) Chief of
CDCR Inmate Appeals Branch Nola Grannis in her official and individual
capacities; (11) Division of Community Partnerships ("DCP"); (12) DCP
Director Del Sayles-Owen in his official and individual capacities; (13)
DCP Community Resource Manager Barry Smith in his official capacity;
(14) the Division of Adult Institutions ("DAI"); (15) DAI Director Suzan
Hubbard in her official capacity; (16) CCWF; (17) CCWF Warden Mary
Lattimore in her official capacity; and (18) Governor Arnold
Schwarzenegger in his official capacity.

HARTMANN V. CALIFORNIA DEP'T OF CORRECTIONS    7

Complaint naming only the CDCR and CDCR Secretary
Cate, which the district court dismissed under Rule 12(b)(6)
with prejudice.

## A.  Factual History

Plaintiffs allege that the Policy as maintained in CDCR
Operations Manual ("Operations Manual"), § 31060.6.1,
deprives them of a paid full-time Wiccan chaplain.  They
claim that the absence of such a chaplain results in
"[i]nfringments, violations, and burdens" that include, among
other things, the prevention or limitation of access to clergy,
religious services, religious rights, chapel, communal
activities with other Wiccans, religious literature and
artifacts, available funds for religious activities, time off work
for religious holidays and services, and counseling in times of
personal crisis.  Plaintiffs assert that inmates provided with
paid chaplains of their faith either do not suffer such
limitations on their religious exercise or that such limitations
are greatly mitigated because paid staff chaplains "are
available to address such issues as they arise."

The CDCR permits inmates of all religions to seek
counsel from volunteer chaplains and from paid staff
chaplains of other faiths.  Plaintiffs claim that "[t]he CCWF
Wiccan volunteer goes to CCWF intermittently, substantially
less than once a month."  They also allege that "there are no
chaplains at CCWF who are knowledgeable about Plaintiff
Hill's Wiccan religion or are otherwise sufficiently informed
to provide religious counseling or other religious
accommodation services to Wiccans."

Plaintiffs further state that "[t]here are no neutral,
equitable, and unbiased criteria that are applied or methods

8    HARTMANN V. CALIFORNIA DEP'T OF CORRECTIONS

used by the CDCR or any other defendant to determine which religions should have paid chaplains or what other types of accommodations should be provided to inmates of various faiths." They submit that "there are more inmates practicing the Wiccan religion at CCWF than there are practicing Jewish and Muslim inmates at CCWF, and the number of inmates practicing the Wiccan religion is more than or comparable to the number of practicing Catholic inmates."

Plaintiffs seek, among other things, to require defendants to hire a qualified Wiccan chaplain and to enjoin them from applying non-neutral criteria in determining future chaplain-hiring needs. They also seek declaratory relief providing that the Policy is facially and as-applied unconstitutional and that it violates RLUIPA.

## B. Procedural History

On December 18, 2008, Plaintiff Hartmann filed a complaint in the Eastern District of California. On October 8, 2009, she filed a First Amended Complaint as a matter of right under Rule 15(a), naming Caren Hill as a co-plaintiff. The First Amended Complaint alleged that under 42 U.S.C. § 1983 defendants' Policy violates the Free Exercise, Establishment, and Equal Protection Clauses; RLUIPA; and the California State Constitution.

The SPB Defendants and all other defendants together each filed a motion to dismiss the First Amended Complaint under Rule 12(b)(6). The SPB Defendants argued that Plaintiffs lack standing under Article III because there were no allegations of misconduct against the SPB Defendants and that the SPB Defendants were not necessary parties to the action because complete relief could be accorded in their

HARTMANN V. CALIFORNIA DEP'T OF CORRECTIONS    9

absence. The remaining defendants moved for dismissal on grounds that the First Amended Complaint failed to meet federal pleading standards under Rule 8 and failed to link the named defendants to the alleged harm. Plaintiffs opposed the motions while seeking, in the alternative, permission to amend the First Amended Complaint.

On April 23, 2010, the district court dismissed the SPB Defendants from the action with prejudice on the basis that Plaintiffs failed to link them to the alleged harms.

On June 11, 2010, the district court dismissed with prejudice and without leave to amend ten defendants from the action as well as Plaintiffs' Free Exercise, Equal Protection, and RLUIPA claims. The district court dismissed with leave to amend Plaintiffs' Establishment Clause claim because "substitution of an appropriate defendant would render the claim cognizable." The district court also retained pendent jurisdiction over the state constitutional claim, provided that Plaintiffs successfully amended the Establishment Clause claim.

Plaintiffs filed a Second Amended Complaint on August 9, 2010. The district court struck the complaint because Plaintiffs renamed defendants whom the court had previously dismissed and because the complaint provided little additional factual support for Plaintiffs' allegations. The district court, "[o]ut of an abundance of caution," granted Plaintiffs leave to file a third amended complaint.

On March 4, 2011, Plaintiffs filed a Third Amended Complaint naming Cate as a defendant in his official and individual capacities in the Establishment Clause claim and CDCR and Cate as defendants in the state constitutional

10  Hartmann v. California Dep't of Corrections

claim.  The CDCR and Cate moved for dismissal under Rule 12(b)(6), and the district court dismissed Plaintiffs' action with prejudice on grounds that it "fail[ed] to satisfy [Rule] 8 requirements to state a short, plain statement of plaintiffs' claims and to provide simple, concise and direct allegations." The court also reasoned that "[t]he absence of facts to connect Secretary Cate to an alleged constitutional violation dooms a section 1983 claim against him."

Plaintiffs timely appealed the dismissal of their claims as to each of the three complaints.[3]

## II.  STANDARD OF REVIEW

This court reviews de novo a district court's dismissal for failure to state a claim under Rule 12(b)(6).  *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1102 (9th Cir. 2008).  We may affirm the district court's dismissal on any ground that is supported by the record, whether or not the district court relied on the same ground or reasoning ultimately adopted by this court.  *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1076–77 (9th Cir. 2003).

---

[3] Defendants argue that Plaintiffs failed to preserve their right to appeal the claims dismissed with prejudice in the First Amended Complaint because Eastern District of California Local Rule 220 requires a party whose claims are dismissed to actually and fully reallege those claims in the amended complaint.  E.D. Cal. Local R. 220 (Feb. 8, 2011).  This court's decision in *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012), negates defendants' contention: "For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal."

HARTMANN V. CALIFORNIA DEP'T OF CORRECTIONS  11

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Facial plausibility" requires a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo*, 521 F.3d at 1104.

## III.   DISCUSSION

### A.  First Amendment—Free Exercise Claim

The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment, *Everson v. Bd. of Educ. of Ewing Twp.*, 330 U.S. 1, 8 (1947), "prohibits government from making a law 'prohibiting the free exercise [of religion].'" *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam) (alteration in original). The Supreme Court has repeatedly held that prisoners retain the protections of the First Amendment. *See, e.g.*, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *Cruz*, 405 U.S. at 322. A prisoner's right to freely exercise his religion, however, is limited by institutional objectives and by the loss of freedom concomitant with incarceration. *O'Lone*, 482 U.S. at 348.

12   HARTMANN v. CALIFORNIA DEP'T OF CORRECTIONS

To prevail on their Free Exercise claim, Plaintiffs must allege facts plausibly showing that the government denied them "a reasonable opportunity of pursuing [their] faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Cruz*, 405 U.S. at 322.

In the First Amended Complaint, Plaintiffs allege that the CDCR provides paid full-time chaplains for inmate adherents of the Catholic, Jewish, Muslim, Native American, and Protestant faiths, but has denied their requests for a paid full-time Wiccan chaplain.  Plaintiffs claim that the absence of a paid full-time Wiccan chaplain has resulted in a litany of "[i]nfringements, violations, and burdens."  They assert that there are more practicing Wiccan inmates at CCWF than practicing Catholic, Jewish, or Muslim inmates.  Plaintiffs further state that the CDCR permits staff chaplains of other faiths and volunteer Wiccan chaplains to assist Wiccan inmates in the practice of their religion, and they admit that they actually receive the assistance of staff chaplains and a volunteer Wiccan chaplain—albeit not of the quality or as often as they would like.

As pleaded, the First Amended Complaint does not contain sufficient facts supporting a cognizable legal theory under the Free Exercise Clause.  Accepting their allegations as true, while Plaintiffs may be better able to exercise their religious beliefs with the assistance of a paid full-time Wiccan chaplain, it is well-settled that the First Amendment does not require prison administration to provide inmates with the chaplain of their choice.  *Cruz*, 405 U.S. at 322 n.2 ("A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the

HARTMANN V. CALIFORNIA DEP'T OF CORRECTIONS   13

demand."); *Ward v. Walsh*, 1 F.3d 873, 880 (9th Cir. 1993)
(affirming summary judgment against Jewish prisoner's Free
Exercise claim because the prison had no affirmative
obligation to provide the only Orthodox Jewish prisoner with
a rabbi); *see also Johnson v. Moore*, 948 F.2d 517, 520 (9th
Cir. 1991) (per curiam) (holding that failure to provide
Unitarian Universalist chaplain did not violate Free Exercise
Clause where inmate had reasonable opportunity to exercise
his faith); *Allen v. Toombs*, 827 F.2d 563, 569 (9th Cir. 1987)
(affirming summary judgment against Native American
prisoners' Equal Protection claim because "the prison
administration is not under an affirmative duty to provide
each inmate with the spiritual counselor of his choice").

Plaintiffs' allegation that there are more Wiccan inmates
than inmates of certain chaplain-provided faiths does not
convert their claim from the possible to the plausible because
it does not show that they have been deprived a "reasonable
opportunity" to freely exercise their faith.  The fact stands
that they, like any other inmate adhering to a religion for
which a paid full-time chaplain is not provided, receive
religious accommodation from staff chaplains and volunteer
chaplains.  Similarly, the assertion that their access to
religious services and funds is limited due to the lack of a
paid full-time Wiccan chaplain is unavailing because the only
remedy Plaintiffs identify is the provision of a full-time
Wiccan chaplain.  The Free Exercise Clause does not require
prison administration to provide Plaintiffs with more than that
which they are currently receiving—*i.e.*, the services of staff
chaplains and a volunteer Wiccan chaplain.

We therefore hold that Plaintiffs fail to plead sufficient
facts showing that the defendants denied them a "reasonable

14   Hartmann v. California Dep't of Corrections

opportunity" to freely exercise their faith comparable to inmates "adhering to conventional religious precepts."

## B.  Fourteenth Amendment—Equal Protection Claim

The Equal Protection Clause requires the State to treat all similarly situated people equally.  *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  This does not mean, however, that all prisoners must receive identical treatment and resources.  *See Cruz*, 405 U.S. at 322 n.2; *Ward*, 1 F.3d at 880; *Toombs*, 827 F.2d at 568–69.

To prevail on an Equal Protection claim brought under § 1983, Plaintiffs must allege facts plausibly showing that "'the defendants acted with an intent or purpose to discriminate against [them] based upon membership in a protected class.'"  *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001)).

Although Plaintiffs assert that they are Wiccan adherents who prison administration denied a paid full-time Wiccan chaplain "intentionally," "with willful disregard for the[ir] rights," and without regard to "the extent of the demand or the mandated requirements" of their religion, their admitted access to a volunteer Wiccan chaplain and staff chaplains of other religions is fatal to their claim.

This court denied a similar claim in *Toombs*, 827 F.2d at 568.  In *Toombs*, Native American inmates brought a claim under the Equal Protection Clause to modify a prison policy prohibiting inmate Pipe Bearers from conducting Pipe Ceremonies for inmates housed in a Disciplinary Segregation Unit because Catholic and Protestant inmates housed in the

HARTMANN v. CALIFORNIA DEP'T OF CORRECTIONS    15

Unit were afforded greater opportunities to pursue their faith through state-provided chaplains. *Id.* In denying the inmates' claim, the court held that "the prison administration is not under an affirmative duty to provide each inmate with the spiritual counselor of his choice." *Id.* at 569 (citing *Gittelmacker v. Prasse*, 428 F.2d 1, 4 (3d Cir. 1970)). The *Toombs* court reasoned that the prison's policy did not violate the Equal Protection Clause because the prison supplied inmates with weekly access to a volunteer Pipe Bearer when one was available. *Id.* at 568–69.

Here, like in *Toombs*, CCWF provides Plaintiffs with access to a volunteer Wiccan chaplain when one is available. Further, while Plaintiffs assert that CDCR refused to hire a Wiccan chaplain "intentionally and with willful disregard for the[ir] rights," this court is not obligated to accept as true "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Plaintiffs fail to support their claim with facts plausibly showing that prison administration discriminatorily denied their requests for a paid full-time Wiccan chaplain. Rather, the exhibits attached to their complaints—which are "part of the pleading for all purposes" under Rule 10(c)—detail the appeals process with respect to each of their requests for a paid full-time Wiccan chaplain at CCWF. The documents reveal that prison officials considered Plaintiffs' requests at a first level review, a second level review, and a director's level review, ultimately determining that a paid Wiccan chaplain was not necessary because a volunteer Wiccan chaplain provides services at CCWF and staff chaplains are available to provide inmates with religious assistance. Instead of showing discriminatory intent, the pleadings suggest a reasoned and vetted denial of Plaintiffs' requests.

16  Hartmann v. California Dep't of Corrections

As with their Free Exercise claim, the Equal Protection Clause does not entitle Plaintiffs to more than what they admit they already receive. We therefore affirm the district court's dismissal of Plaintiffs' Equal Protection claim.

## C.  RLUIPA Claim

Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government shows that the burden is "in furtherance of a compelling government interest" and "is the least restrictive means of furthering . . . that interest." 42 U.S.C. § 2000cc-1(a) (2012). "While [RLUIPA] adopts a 'compelling governmental interest' standard, '[c]ontext matters' in the application of that standard." *Cutter*, 544 U.S. at 722–23 (alteration in original) (internal citation omitted) (quoting *Grutter v. Bollinger*, 539 U.S. 306, 327 (2003)). Courts are expected to apply RLUIPA's standard with "'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" *Id.* at 723 (quoting 146 Cong. Rec. 16698, 16699 (2000) (joint statement of Sen. Hatch and Sen. Kennedy on RLUIPA)).

Under RLUIPA, Plaintiffs bear the initial burden of persuasion on whether the Policy "substantially burdens" their "exercise of religion." § 2000cc-2(b). RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7)(A). RLUIPA does not

HARTMANN V. CALIFORNIA DEP'T OF CORRECTIONS  17

define "substantial burden," but this court has held that "a substantial burden on religious exercise must impose a significantly great restriction or onus upon such exercise." *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004) (internal quotation marks omitted) (affirming summary judgment for municipality on college's RLUIPA challenge to zoning decision prohibiting use of land for Christian education facility). In the context of a prisoner's constitutional challenge to institutional policies, this court has held that a substantial burden occurs "where the state . . . denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (alteration in original) (quotation omitted).

To survive a motion to dismiss on their RLUIPA claim, plaintiffs must allege facts plausibly showing that the challenged policy and the practices it engenders impose a substantial burden on the exercise of their religious beliefs. *See id.* at 994–95. Here, Plaintiffs allege that the Policy deprives them of accommodations central to their religious exercise—namely, a paid full-time Wiccan chaplain. They support their claim with a litany of "[i]nfringements, violations, and burdens" that result from the lack of a regularly-employed Wiccan chaplain.

Plaintiffs, however, fail to plead any factual allegations showing their religious exercise was so burdened as to pressure them to abandon their beliefs. *See, e.g., id.* at 996 (upholding Native American inmate's RLUIPA claim challenging a prison grooming policy where prisoner alleged he was subjected to a series of punishments for refusing to comply with the policy); *Shakur v. Schriro*, 514 F.3d 878,

18   HARTMANN v. CALIFORNIA DEP'T OF CORRECTIONS

882, 891 (9th Cir. 2008) (remanding Muslim prisoner's RLUIPA claim to determine whether state-provided vegetarian meals, which prisoner claimed gave him gas and aggravated his hiatal hernia, pressured him to abandon his beliefs by precluding the state of "purity and cleanliness" necessary for Muslim prayer). Rather than claiming they have been pressured to abandon their religious beliefs, Plaintiffs seek additional religious accommodations beyond those already provided by the prison to facilitate the religious exercise of their Wiccan faith.

Because Plaintiffs admittedly benefit from the services provided by a volunteer Wiccan chaplain and staff chaplains, they fail to allege a substantial burden under RLUIPA.

### D.  First Amendment—Establishment Clause Claim

The Establishment Clause, applicable to state action by incorporation through the Fourteenth Amendment, *Everson*, 330 U.S. at 8, states that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. The clause "means at least" that "[n]either a state nor the Federal Government . . . can pass laws which aid one religion, aid all religions, or prefer one religion over another." *Everson*, 330 U.S. at 15.

We reverse the district court's dismissal of Plaintiffs' Establishment Clause claim because sufficient facts were pleaded to support an entitlement of relief. We also reverse the district court's dismissal of defendants Cate and CCWF Warden Mary Lattimore from this cause of action because they are proper official-capacity defendants.

HARTMANN V. CALIFORNIA DEP'T OF CORRECTIONS  19

### i.  Sufficiency of the Pleadings

Plaintiffs allege that the Policy violates the Establishment Clause because it "favor[s] some religions over others on a preferential basis."  They further assert that defendants do not apply any "neutral, equitable, and unbiased criteria" to determine chaplain hiring needs or other religious accommodations for inmates of various faiths.  They submit that there are more inmates practicing the Wiccan religion at CCWF than there are practicing Jewish, Muslim, and Catholic inmates at CCWF.[4]  Yet, they claim that chaplaincy positions are available for the benefit of Jewish, Muslim, and Catholic inmates but not for Wiccan inmates.

Prison employment of full-time chaplains to assist inmates in their religious exercise is a permissible accommodation within the established parameters of the First Amendment.  *See, e.g.*, *Cruz*, 405 U.S. at 322; *Ward*, 1 F.3d

---

[4]  In *McCollum v. California Department of Corrections & Rehabilitation*, 647 F.3d 870 (9th Cir. 2011), this court considered an appeal involving the very policy at issue here.  In that case, we noted that,

> According to a 2002 CDCR survey, there were approximately 598 Wiccan inmates in custody . . . . This number compares to 20,901 Protestant inmates, 11,351 Catholic inmates, 1,773 Muslim inmates, 1,482 Native American inmates, 306 Jewish inmates, and 4,155 inmates identified as "other."  In September 2007, the inmate survey indicated 42,666 Protestant inmates, 28,884 Muslim inmates, 23,160 Catholic inmates, 8,296 Native American inmates, 3,296 Jewish inmates, 183 Wiccan inmates, and 2,678 inmates identified as "other."

*McCollum*, 647 F.3d at 875.

20  HARTMANN v. CALIFORNIA DEP'T OF CORRECTIONS

at 880; *Toombs*, 827 F.2d at 568–69; *see also Johnson-Bey v. Lane*, 863 F.2d 1308, 1312 (7th Cir. 1988) ("Prisons are entitled to employ chaplains and need not employ chaplains of each and every faith to which prisoners might happen to subscribe . . . ."). Unlike Plaintiffs' claims that the Policy deprives them of a "reasonable opportunity" to practice their religion and imposes a "substantial burden" on their religious exercise, their Establishment Clause claim asserts that the Policy constitutes an unconstitutional endorsement of one religion over another. Accepting Plaintiffs' allegations as true, the prison administration has created staff chaplain positions for five conventional faiths, but fails to employ any neutral criteria in evaluating whether a growing membership in minority religions warrants a reallocation of resources used in accommodating inmates' religious exercise needs. While federal courts refuse, "even where claims are made under the First Amendment, to substitute [their] judgment on . . . difficult and sensitive matters of institutional administration, for the determinations of those charged with the formidable task of running a prison," *O'Lone*, 482 U.S. at 353 (quotation omitted), a prison administration accommodating inmates' rights under the First Amendment must do so without unduly preferring one religion over another, *Everson*, 330 U.S. at 15.

The court is not making a finding that there would necessarily be a violation of the Establishment Clause. Such a finding can only be made in light of all the circumstances surrounding the defendants' decisions. On remand, Plaintiffs must actually prove their allegations. For example, at a minimum, a court would have to ascertain whether paid staff chaplains work only at the CCWF or are required to travel to other prisons, jails, and correction facilities in the State. The allegations in Plaintiffs' complaints suggest the former, but

HARTMANN V. CALIFORNIA DEP'T OF CORRECTIONS  21

evidence presented during discovery may suggest that the latter is the case.

Another example of evidence relevant to an Establishment Clause violation would be a survey of inmate religious affiliation in the CCWF prison population and the broader CDCR prison population. Such a survey is prominently mentioned in our decision in *McCollum*, 647 F.3d 870, which is discussed in footnote 4 of this opinion. If such a yearly survey was conducted and filed as a public document, the district court could take judicial notice thereof, or the parties could include such a survey in their papers. We recognize that this comes to us as a decision on the pleadings and that the defendants may have such proof, but it has not been made a part of the record.

For the foregoing reasons, Plaintiffs' Establishment Clause claim survives a motion to dismiss under Rule 12(b)(6).

## ii. Official-Capacity Defendants

As to their claim under the Establishment Clause, Plaintiffs named in the First Amended Complaint twelve defendants in their official capacities and three defendants in their personal capacities. In the Third Amended Complaint, Plaintiffs named Cate as the sole defendant in his official and individual capacity. Plaintiffs appeal only the district court's dismissal of official-capacity defendants Cate, Lattimore, the SPB Members, DCP Director Del Sayles-Owen, and DCP Community Partnership Manager Barry Smith. We therefore do not discuss whether Plaintiffs properly pleaded a claim against these defendants in their individual capacities.

### a. Cate and Lattimore

An official-capacity suit "represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690 n.55 (1978)); *see Hafer v. Melo*, 502 U.S. 21, 25 (1991). "Suits against state officials in their official capacity therefore should be treated as suits against the State." *Hafer*, 502 U.S. at 25. A plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation. *See id.*; *Graham*, 473 U.S. at 166. Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief. *See L.A. Cnty. v. Humphries*, 131 S. Ct. 447, 452, 454 (2010); *Hafer*, 502 U.S. at 25.

Here, Plaintiffs seek an affirmative injunction requiring prison administration to adopt and apply neutral criteria in determining chaplain hiring needs at CCWF, which operates under CDCR control. They allege that "Cate is responsible for the administration of the CDCR, including its policies, practices, and customs, and therefore has the responsibility and authority to ensure that the CDCR religious accommodation policies comply with and do not violate federal and state constitutions and statutory requirements." They also assert that "Lattimore is responsible for the policies and practices regarding the day-to-day operation of CCWF, including the hiring and supervision of all subordinate personnel at CCWF, including chaplains." Defendants admit in their Motion to Dismiss the First Amended Complaint that Lattimore is the "most appropriate" defendant to execute

HARTMANN V. CALIFORNIA DEP'T OF CORRECTIONS   23

court-ordered injunctive relief and that "Cate would have the authority to ensure execution of any order issued."  We therefore hold that Cate and Lattimore are proper official-capacity defendants for Plaintiffs' Establishment Clause claim.

### b.  SPB Members

The district court dismissed the SPB Members from this action reasoning that Plaintiffs did not allege a causal connection between the SPB Members and a constitutional or statutory violation.  Plaintiffs now argue that the SPB Members are necessary parties under Rule 19(a).  We hold that Plaintiffs lack standing to sue the SPB Members for the alleged violation and that the SPB Members are not necessary parties to this action.

Article III requires a plaintiff asserting claims in federal court to have suffered an "injury in fact" that is fairly traceable to the conduct of a named defendant and that will be "likely" "redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

In their First Amended Complaint, Plaintiffs state that the SPB "has given testimony under oath that it has no authority to establish chaplaincy positions."  The SPB Members argued in their motion to dismiss, and the district court agreed, that their involvement in creating new employment positions occurs only upon its receipt of a proposal to create such a position.  On appeal, Plaintiffs submit that it is immaterial that "the claim is not ripe or that there is no basis for any claim against the SPB because it has never been asked to approve a new classification and has no policy of refusing to approve one."  Plaintiffs instead argue that a direct cause of

24   HARTMANN v. CALIFORNIA DEP'T OF CORRECTIONS

action against the SPB Members is not required because, without the SPB Members, the court cannot accord proper relief—*i.e.*, an injunction establishing a paid full-time Wiccan chaplain.

Plaintiffs support their argument by citing *EEOC v. Peabody Western Coal Co.*, 400 F.3d 774 (9th Cir. 2005), as a narrow exception to the causation and traceability requirements of Article III standing. *See Lujan*, 504 U.S. at 560–61. In *Peabody*, this court considered whether the Navajo Nation was a necessary party to an EEOC action brought against Peabody under Title VII, 42 U.S.C. § 2000e-2(a)(1) (2012), challenging discriminatory hiring provisions in coal-mining leases executed between Peabody and the Navajo Nation. *Id.* at 776. The *Peabody* court held that, although the EEOC had no cause of action against the Navajo Nation, it was a necessary party under Rule 19(a) because to hold otherwise would permit the Navajo Nation to collaterally attack any injunctive relief ordered by the court. *Id.* at 780. This court clarified its holding in *Peabody* during a subsequent appeal from the district court's grant of summary judgment. *EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070 (9th Cir. 2010). There, we stated that "[a]n absentee can be joined under Rule 19 in order to subject it, under principles of *res judicata*, to the 'minor and ancillary' effects of a judgment." *Id.* at 1079 (citing *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 399 (1982)).

The case at bar is distinguishable. Unlike in *Peabody*, there is no concern that the SPB Members will collaterally attack court-ordered relief. Further, Plaintiffs argue myopically that if the court orders the CDCR to create a paid full-time Wiccan chaplain position, the SPB Members would first be required to approve the proposed civil service

HARTMANN V. CALIFORNIA DEP'T OF CORRECTIONS  25

position.  This argument elides the court's ability to impose alternative remedies, such as requiring Cate or Lattimore to procure a personal services contract with a Wiccan chaplain. Adoption of Plaintiffs' argument would also establish the broad precedent that any entity or individual participating in a court-ordered remedy constitutes a necessary party.  This court is satisfied that Cate and Lattimore could and would sufficiently execute any court-ordered relief.

Because Plaintiffs lack Article III standing with respect to the SPB Members, we affirm their dismissal from this action.

### c.  Sayles-Owen and Smith

As with the SPB Members, Plaintiffs lack Article III standing to sue Sayles-Owen and Smith because Plaintiffs fail to show that they suffered an "injury in fact" that is fairly traceable to the conduct of the named defendants.  *See Lujan*, 504 U.S. at 560–61.  Here, Plaintiffs allege a plausible Establishment Clause claim based on the prison administration's adoption and maintenance of a policy that lacks neutral criteria in determining chaplain hiring needs. Plaintiffs must therefore allege facts linking Sayles-Owen and Smith to the adoption, regulation, and revision of the Policy.

Plaintiffs state in their First Amended Complaint that Sayles-Owen "is responsible for the functions of the DCP," which is "a Division of the CDCR" that "administers, interprets, and formulates religion policy and procedures." Plaintiffs, however, fail to establish any connection between DCP or Sayles-Owen and the adoption, regulation, or revision of the Policy as stated in the Operations Manual.

26  HARTMANN v. CALIFORNIA DEP'T OF CORRECTIONS

Similarly, Plaintiffs state that Smith is "employed by the CDCR to serve in the DCP as a [Community Resources Manager] and is the primary person in the CDCR responsible for DCP policies, practices, and decisions regarding inmate religious accommodations." Plaintiffs allege nothing more than that the DCP is an agency operating under CDCR control. They therefore fail to show the requisite causal nexus between Smith and the adoption, regulation, or revision of the Policy.

Because Plaintiffs lack Article III standing to sue Sayles-Owen and Smith with respect to their alleged Establishment Clause claim, we affirm the dismissal of these defendants from this cause of action.

### E.  California State Constitution Claim

Article I, Section 4 of the California State Constitution states that "[t]he Legislature shall make no law respecting an establishment of religion." Cal. Const. art. I, §4. The Supreme Court of California recognizes that this provision "coincides with the intent and purpose of the First Amendment establishment clause." *E. Bay Asian Local Dev. Corp. v. California*, 13 P.3d 1122, 1138–39 (Cal. 2000), *cert. denied*, 532 U.S. 1008 (2001). For the reasons discussed above with respect to Plaintiffs' Establishment Clause claim, we reverse and remand the district court's dismissal with prejudice of the state constitutional claim, over which it retains supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3) (2012).

While the district court recognized that the CDCR was a proper defendant in this claim, Plaintiffs appeal the district court's dismissal of SPB, DCP, CCWF, Cate, Lattimore,

Sayles-Owen, and Smith.  Article III standing requirements must be met with respect to each named defendant.

As in Plaintiffs' Establishment Clause claim, official-capacity defendants Cate and Lattimore are properly named in their state constitutional claim, as are the respective entities that employ them—CDCR and CCWF.  Also consistent with previous analyses, Plaintiffs lack standing to bring their claim against the SPB, DCP, Sayles-Owen, and Smith.

## F. District Court's Denial of Leave to Amend Plaintiffs' Complaints

Plaintiffs appeal the district court's denial of their motion for leave to amend each of their three complaints.  Because we remand Plaintiffs' Establishment Clause and state constitutional claims, we only address their appeal with respect to the remaining causes of action in the First Amended Complaint.

The district court's denial of a motion to amend a complaint is reviewed for an abuse of discretion.  *See Ordonez v. Johnson*, 254 F.3d 814, 815–16 (9th Cir. 2001).  A district court may deny leave to amend when amendment would be futile. *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 725–26 (9th Cir. 2000).

In the First Amended Complaint, Plaintiffs allege that defendants violated their rights under the Free Exercise Clause, Equal Protection Clause, and RLUIPA, by refusing to hire a paid full-time Wiccan chaplain.  Because we hold that Plaintiffs' access to and receipt of religious services provided by full-time chaplains of other faiths and a volunteer Wiccan

28   HARTMANN V. CALIFORNIA DEP'T OF CORRECTIONS

chaplain belies their claims, further amendment would be futile.

The district court therefore did not abuse its discretion in denying Plaintiffs leave to amend the First Amended Complaint.

## IV.    CONCLUSION

For the foregoing reasons, the district court's dismissal of Plaintiffs' claims under the Free Exercise Clause, Equal Protection Clause, and RLUIPA is affirmed.   Because Plaintiffs sufficiently pleaded facts supporting a plausible claim under the Establishment Clause and the California State Constitution, we remand both claims to the district court for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**